[L. A. No. 16655. In Bank.—November 22, 1938.]

HELEN ELLISON, as Administratrix, etc., Respondent, v. LANG TRANSPORTATION CO. (a Corporation), Appellant.

CAETANO V. ANDRADE, as Administrator, etc., Respondent, v. LANG TRANSPORTATION CO. (a Corporation), Appellant.

George H. Moore and Gerald O'C. Egan for Appellant.

Hugh B. Rotchford, as *Amicus Curiae,* on Behalf of Appellant.

Claflin, Dorsey & Campbell and Charles R. McCarty for Respondents.

SHENK, J.—The defendant has appealed from judgments rendered against it in two actions consolidated for trial. Each action was prosecuted by the personal representative of one who met death in a collision between the automobile driven by the decedent Ellison, in which the decedent Nora Andrade was riding, and a loaded trailer attached to a truck being operated by the defendant's employee. Each plaintiff sought damages for alleged wrongful death. The actions were tried

twice. The first trial resulted in verdicts in the amounts of $30,000 and $20,000 awarded respectively to the representatives of Ellison and Nora Andrade. The verdicts and the judgments entered thereon were set aside on motions for new trial. On the second trial the jury returned verdicts of $12,000 and $10,000 respectively. The appeal is from the judgments entered on these verdicts.

The decedent Ellison was 36 years of age and supported his wife and four minor children by earning $100 per month as a railroad employee. The oldest child was ten years of age at the time of the accident. At the time of her death Nora Andrade was 33 years of age. She and her husband made their home with their four minor children ranging in age from 4 to 12 years when the accident occurred. It was in evidence that Nora Andrade also contributed to the family living expenses to the extent of $50 or $60 a month by doing housework for school teachers and doctors. Both families lived in Bakersfield.

Claude Ellison, Nora Andrade, James Ellis, Rachel Keys, and three of the Andrade children were being driven by Ellison in his Studebaker coach from Los Angeles to Bakersfield over the Ridge Route in the early morning hours of November 13, 1934. Between Castaic and Gorman, at 2 or 2:30 o'clock the Studebaker, going about 35 miles an hour, struck the rear end of the defendant's truck and trailer, loaded with steel, going about four miles per hour up the grade. Both Claude Ellison and Nora Andrade were killed by the impact.

Whether the judgments are sustainable depends on the sufficiency of the evidence to support the jury's implied findings that the defendant was negligent and that the respective decedents were not guilty of contributory negligence; and on the correctness of the rulings of the court made in the course of the trial and in instructing the jury.

█ Existence of negligence for which the defendant may be held liable depends on whether there was sufficient evidence that the truck was proceeding without lights or without sufficient warning lights on the loaded trailer and on the steel projecting from the rear thereof. The evidence on this question was in conflict.

The truck driver testified that he left Los Angeles at 5 P. M. with his load. He examined his lights, including the lights

fastened to the rear of the extended steel, at Glendale. At Roscoe he again examined his lights and found they were burning. Here he lighted a red globe lantern and placed it on the projecting metal. He stopped at the northerly edge of San Fernando for his supper, and turned off only his headlights while his truck was parked at the side of the road. After supper he noted that all rear and side lights were burning. He thereupon turned on his headlights and proceeded on his way. At Castaic about midnight he stopped for lunch, again turning off only his headlights. He then proceeded again after turning on his headlights. As he passed Paradise Garage, about 700 feet southerly from the point of the accident, he saw on his left the reflection of his headlights and some of the side and extended lights.

The surviving occupants in the Studebaker automobile testified that no lights were observable, but that immediately preceding the crash "there was a big black object". There was other evidence on both sides of the question of the condition of the lights both before and after the accident, including evidence from which the jury could conclude that there was not sufficient illumination at the rear end of the trailer and no illumination on the projecting steel. The state of the record on the questions of negligence and contributory negligence is such that the evidence for the plaintiffs, if believed by the jury, is sufficient to sustain the verdicts in their favor.

The defendant specifies some twelve alleged erroneous rulings claimed to be prejudicial, in giving or refusing instructions and in the admission of evidence. At the plaintiffs' request the court instructed the jury that "the presumption is that a person takes ordinary care of his own concerns. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence". The defendant contends that the giving of such an instruction is prejudicially erroneous in a case where the plaintiffs, as here, presented testimony as to the details of the accident and the conduct of the decedents before and at the time of the occurrence relying on *Kelly* v. *Fretz*, 19 Cal. App. (2d) 356 [65 Pac. (2d) 914], and other cases following *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269], to the effect that a presumption in favor of a party is entirely dispelled by

the testimony of the party himself or of his witnesses, which is wholly irreconcilable with the presumption sought to be invoked.

It may be assumed that the giving of an instruction indicating to the jury that a decedent is presumed to have taken due care of his own concerns is erroneous in a case where all the details of his conduct and of the accident are disclosed to the contrary by those seeking recovery on account of his alleged wrongful death. In other words, it may be assumed that in such a case there is no place for the presumption under the rule of the cases relied upon. However, the giving of the quoted instruction in this case may not properly be objected to by the defendant. The instruction told the jury that the presumption remained only until it was overcome by satisfactory evidence. This qualifying language was not included in the instruction given in the case of *Kelly* v. *Fretz, supra,* where the effect of the instruction was held to be a statement to the jury that the deceased was presumed to have been free from contributory negligence. That was not the effect of the instruction in this case. Furthermore, the defendant asked for instructions concerning presumptions favorable to itself, which the court gave with the qualification that such presumptions were a species of evidence and should prevail and control the deliberations of the jury until and unless overcome by satisfactory evidence. We also note that at the defendant's instance the court instructed the jury that "all drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see that which may be readily seen, if the driver is looking, would constitute negligence as a matter of law", and that even though the jury find "that the statutory limit of speed of 45 miles per hour was not being exceeded by the driver of the automobile in which plaintiffs were riding, yet the rate of speed at which an automobile may be traveling may be held under some circumstances to be negligence. That is to say, the operator of an automobile is not necessarily free from negligence by a showing, simply, that at the time of the accident he was running at a rate of speed allowed by law. He still remains bound to anticipate that he may meet persons or vehicles at any point

on the highway, and he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his automobile under such control as will enable him to avoid a collision with another vehicle driven with care and caution as a reasonably prudent person would do under similar conditions''.

We have examined the record and we cannot say that the giving of the instruction complained of was either erroneous in the light of the plaintiffs' evidence or that it prejudiced the defendant's rights in any way. ▮ This court has heretofore held that in the absence of any showing of prejudice to the appellant the giving of such instruction, if error, does not require a reversal of the judgment. (*Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 Pac. (2d) 709]; *Tuttle* v. *Crawford*, 8 Cal. (2d) 126 [63 Pac. (2d) 1128].)

▮ Likewise, we find that no prejudicial error was committed in the giving of other instructions complained of by the defendant or in the refusal to give certain requested instructions. All subjects were fairly and fully covered by the court in its charge to the jury. Mere matters of phraseology objected to by the defendant are found to be inconsequential and not of sufficient moment to require specific mention. Nor do we find that any prejudice appears to have been suffered by the defendant by any of the rulings of the court which it designates as erroneous. The trial was full and fair, and the damages do not appear to be excessive.

We conclude that no point made on this appeal would justify a reversal of the judgments. Each of the judgments is, accordingly, affirmed.

Curtis, J., Langdon, J., and Waste, C. J., concurred.

EDMONDS, J., Dissenting.—I cannot agree with the conclusion that under the evidence presented by the record in these cases the trial judge committed no prejudicial error when he instructed the jury that the law presumes a person takes ordinary care of his own concerns. The plaintiffs, in addition to relying upon the presumption, by the testimony of Rachel Keys and James Ellis, who were occupants of the automobile which Claude Ellison was driving, showed all of the circumstances surrounding the happening of the accident. This testimony was uncontradicted. The opinion of

my associates concedes "that the giving of an instruction indicating to the jury that a decedent is presumed to have taken due care of his own concerns is erroneous in a case where all the details of his conduct and of the accident are disclosed to the contrary by those seeking recovery on account of his wrongful death", but concludes that under the facts shown "we cannot say that the giving of the instruction complained of was either erroneous in the light of the plaintiffs' evidence or that it prejudiced the defendant's rights in any way". Such a determination, in my judgment, is inconsistent with other decisions of this court on the same subject.

A rebuttable presumption, such as the one stated to the jury by the challenged instruction, assumes that which human reason and experience dictate should be true as the result of certain proved facts. (Ballentine's Law Dictionary.) A fact is presumed to exist because of the absence of evidence by which it may be established. More specifically, a presumption is a rule of law that under certain circumstances a fact is assumed to be true for the purpose of judicial action.

Although it has not always been so, it is now the rule in this state that a rebuttable presumption is evidence which may be considered by the jury even in the face of evidence to the contrary produced by the litigant against whom the presumption has been invoked. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269] ; *Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 Pac. 529].) The reason for this rule is said to be that the jury, as the trier of fact, may not believe the evidence produced in contradiction of the presumption, and in that event the decision is not required to be "in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds against a less number or against a presumption or other evidence satisfying their minds". (Sec. 2061, Code Civ. Proc.) Under such circumstances the presumption is opposed by the evidence of the litigant who is contending for a decision contrary to it.

But the situation in the present case is that *one who claims the benefit of the presumption* has also offered evidence from which a conclusion directly contrary to it may be inferred. True, under another view of that evidence it is not inconsistent with the presumption. But when it may reasonably

be said that the evidence would support a verdict contrary to the presumption, I can see no basis for submitting the presumption to the jury.

That this court has recognized the difficulties which arise in cases where facts are proved from which the law expressly directs a presumption to be made (sec. 1959, Code Civ. Proc.) and there is also evidence tending to prove what actually occurred, is evident from the decisions commencing with *Mar Shee* v. *Maryland Assur. Corp., supra*. That case was brought by the beneficiary of an accident insurance policy which had been issued to one Fong Wing. It contained a provision that the insuring company should not "be liable for any injury, fatal or otherwise, resulting directly or indirectly from murder, highbinder acts, or tong wars, anything else in the policy to the contrary notwithstanding". The insured was shot twice while on the street near his place of business and died as a result of his wounds. The insurance company resisted payment upon the ground that his death occurred from causes excluded by the policy. The plaintiff relied upon the presumption "that a person is innocent of crime or wrong" (sec. 1963, Code Civ. Proc.); hence, the shooting was accidental rather than criminal. But he also offered testimony showing the circumstances surrounding the shooting and this court held that the facts so shown were wholly irreconcilable with the presumption and that it was dispelled thereby. In the later case of *Smellie* v. *Southern Pac. Co., supra,* the same rule was stated somewhat differently. There the court said: "When the presumption is invoked by a party and his evidence is not inconsistent therewith, it is in the case, provided, of course, the evidence sufficiently establishes a sphere or field within which the presumption can operate."

Under these two leading cases if the evidence offered by one claiming the benefit of the presumption is "wholly irreconcilable" with the presumption it disappears from the case; if the evidence is not "inconsistent" with the presumption it may be considered. In the later case of *Mundy* v. *Marshall,* 8 Cal. (2d) 294 [65 Pac. (2d) 65], the court declined to consider the presumption of due care where there was evidence from which contributory negligence could be, although not necessarily, inferred. It held that as the plaintiff's own evidence showed the manner in which the decedent was cross-

ing the street, the presumption that he was exercising due care could not be invoked. The subject was again considered in the case of *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 Pac. (2d) 709]. There the court pointed out that what the plaintiff did at the time he was injured was entirely covered by the evidence offered on his behalf and there was, therefore, "neither necessity nor reason for indulging in any presumption upon that subject". Under such circumstances, it was held, an instruction that until the contrary appears by the evidence, a plaintiff is presumed by the law to have exercised ordinary care "had no place . . . and should not have been given. Had this been a case where the contributory negligence of the plaintiff could have defeated his claim for damages, the consequences following the giving of that instruction might have been most serious, and possibly might have required a reversal of the judgment".

As I read these cases the latter two hold that whenever a plaintiff offers evidence showing all of the facts and circumstances surrounding the happening of an accident, he cannot invoke the presumption of due care. If this statement be too broad, certainly the first two cases bar the presumption where there is evidence either inconsistent or wholly irreconcilable with it. Under the first statement of the rule the plaintiffs in the present case were not entitled to the benefit of the presumption. And unless the second statement of it means that the evidence which is offered by a plaintiff must be open only to the construction that the one whose actions are being considered, did not use ordinary care, then the same result must follow.

In my opinion it is illogical to say that although one who is relying upon a presumption of due care may not offer evidence which reasonably points to the contrary and submit both the presumption and the evidence to a jury, that such evidence may be considered with the presumption if it is also susceptible to an inference consistent with the presumption. Under such circumstances as a practical proposition it would be impossible for the jury to weigh the evidence because of the court's instruction. As against the evidence from which negligence could reasonably be inferred, the jury would be confronted by a rule of law that the one whose actions were being considered used due care. In such a situation is it not certain that the jury would feel compelled

to render a verdict which followed the instruction notwithstanding the evidence? It is apparent to me that this is exactly what occurred in the present case.

From the evidence offered by the plaintiffs it appears that the collision occurred about 2:30 A. M. on a journey from Los Angeles to Bakersfield which commenced at midnight. Mr. Ellison was driving the five-passenger coach in which four adults and three children were traveling. Alongside the driver's seat there was a separate one which was occupied by Mr. Ellis. Miss Keys was sitting partly on an overnight bag between these seats and partly upon the seat occupied by Mr. Ellis. Mrs. Andrade and her three children were sitting in the rear seat. Just prior to the accident the adults "had been talking backwards and forwards in the car, carrying on a conversation" and the children were singing. Miss Keys testified that the car was "going about 30"; it was traveling "down hill" and she "didn't see anything until we got right up on the truck and at that time the car hit the truck". Mr. Ellis fixed the speed of the automobile at 30 or 35 miles per hour and stated that "Mr. Ellison was talking to me prior to the accident"; that immediately prior to the crash he saw "a big black object of some kind" close enough so he "could say 'Look out' and that is all" before the collision occurred. Afterward, according to his testimony, he saw that the automobile had struck the right rear corner of the trailer. He then noticed the load on the trailer. The angle iron had been moved or pushed to the right. The flat sheet iron that extended over the rear end of the trailer was bent down on the right rear corner and next to it he observed a broken tail light "on the rear end, on the extreme right hand side".

This evidence, according to one view of it, was "wholly irreconcilable" with the presumption and entirely "inconsistent therewith". From the testimony of the plaintiffs' witnesses the jury might have inferred that Mr. Ellison was guilty of contributory negligence because he was driving at an excessive rate of speed, or while he was not looking ahead, or that he was operating the car while his senses were dulled by fatigue and loss of sleep, or that the automobile did not have headlights as required by law, or that it was not under reasonable control, considering the time of night, the condition of the road and the number of persons in the front

part of it. Except for the instruction requiring it to give effect to the presumption, the jury might have found a verdict in favor of the defendant. Under these circumstances I am of the opinion that the giving of the challenged instruction was prejudicial error and that each of the judgments should be reversed.

Seawell, J., concurred.

Rehearing denied. Seawell, J., and Edmonds, J., voted for a rehearing.