[Civ. No. 4144.   Fourth Dist.   Jan. 26, 1951.]

ANNA PEARL TICE et al., Appellants, v. KAISER COM-
PANY, INC. (a Corporation), Respondent.

Arthur Garrett for Appellants.

Swing & Gillespie for Respondent.

GRIFFIN, J.—The heirs of Roy Alfred Tice, deceased, plaintiffs and appellants, brought this action against defendant and respondent Kaiser Company, Inc., a Nevada corporation, for his wrongful death. The complaint alleges that on June 27, 1947, at Fontana, the deceased met his death as a result of being struck by a bridge crane, negligently operated by defendant. The answer of the Kaiser Company, Inc., which corporation operates a steel mill where the accident happened, admitted the employment of the crane operator, W. H. Machin, one of the defendants named herein (the cause of action against him was subsequently dismissed by plaintiff) ; denied negligence, pleaded contributory negligence of the deceased, unavoidable accident, and assumption of risk. Trial by jury resulted in a verdict against defendant for $45,000. Thereafter, a motion for judgment notwithstanding the verdict was made and denied, reserving the right to apply for a new trial under section 629 of the Code of Civil Procedure, and the authority of *Estate of Green,* 25 Cal.2d 535, 545 [154 P.2d 692].

A motion for new trial on the ground of insufficiency of the evidence and on the further ground of giving of erroneous instructions requested by plaintiffs was granted. On this appeal we will first consider the court's ruling that, according to the weight of the evidence, it was insufficient to support the verdict. ■ In considering this question

we are immediately confronted with the settled rule that when a new trial is granted, the presumption is in favor of the order granting the new trial and against the judgment. (*Scott* v. *Renz*, 67 Cal.App.2d 428 [154 P.2d 738].) An appellate court will not interfere with the trial court's order in the absence of a showing of manifest or unmistakable abuse of discretion. It is not only the right, but the duty of the trial judge to grant a new trial when, in his opinion, he believes the weight of the evidence to be contrary to the finding of the jury. Trial judges have been commended, rather than condemned, for their actions in granting new trials under these circumstances. See *Sassano* v. *Roullard*, 27 Cal.App.2d 372, 374 [81 P.2d 213]; *Green* v. *Soule*, 145 Cal. 96, 103 [78 P. 337]; *Lewis* v. *Southern California Edison Co.*, 116 Cal.App. 44, 53 [2 P.2d 419]; *Waid* v. *Smith*, 87 Cal.App.2d 32 [195 P.2d 862]; *Imperial-Yuma Production Credit Assn.* v. *Shields*, 74 Cal.App.2d 932, 935 [169 P.2d 671]; and *Clippinger* v. *Reiss*, 17 Cal.App.2d 604 [62 P.2d 418], wherein it is said:

". . . a trial court is not only authorized but is under a duty to grant a new trial whenever in its opinion the evidence upon which the former decision rests is insufficient to justify the decision and . . . its action in granting a new trial on this ground is discretionary to the extent that if any appreciable conflict exists in the evidence the court's action may not be disturbed on appeal." (See, also, *Sweeley* v. *Leake*, 87 Cal.App.2d 636, 640 [197 P.2d 401]; *Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110 [142 P.2d 929]; *Hendricks* v. *Pappas*, 82 Cal.App.2d 774 [187 P.2d 436].)

Counsel for plaintiffs, in his brief, has referred to portions of the evidence which, standing alone, might have supported the jury's verdict. Counsel for defendant have set forth, in minute detail, the evidence produced which might well show a lack of negligence on the part of defendant, and might well show that the deceased was guilty of such contributory negligence on his part as would preclude a recovery.

Viewing the evidence in the light most favorable to support the trial court's order, which we must do, the evidence shows the following résumé of facts. On October 9, 1945, defendant Kaiser Company, Inc., desiring to make a number of additions to and modifications of its iron and steel plant at Fontana, let a general contract to Kaiser Engineers, Inc. (a separate corporation from defendant) as "Engineer-Contractor," "to design and construct such additions and

modifications." About a year later the defendant, as "owner," and Kaiser Engineers, Inc., as Engineer-Contractor, let a subcontract to Consolidated Steel Corporation, as "sub-contractor," to "furnish, fabricate, haul, and erect the structural steel" for an extension of the Alloy Finishing Building west of and adjoining the already existing Merchant Mill Building. About June 27, 1946, the "sub-contractor" reached the stage of its work where it was riveting together the structural steel and new overhead craneway. It was to be connected laterally with the building columns of the west wall of the Merchant Mill Building and the crane beam and supporting columns of a duplicate overhead craneway already existing and in operation inside the Merchant Mill Building. On the morning of the accident the decedent Tice was employed by the "sub-contractor" as one of a crew of five ironworkers (four working aloft and one on the ground) engaged in riveting together the structural steel of the new craneway extension. The crew had been working at another point on the new craneway until about noon of that day. They then moved to a point at the foot of what is known as Column 29, adjoining the Merchant Mill Building. There is a conflict in the evidence as to what, if anything, was said to the riveting crew, including decedent Tice, as to the nature of the work pertaining to Column 29, and whether the crew was notified not to remove the metal siding on the west wall of the Merchant Mill Building and not to place themselves inside that particular building until a decision could be reached as to when the cranes and electricity operating the plant then located in the Merchant Mill Building could be conveniently shut down.

One O. J. Smith, foreman of the ironworkers' crew, employed by the Consolidated Steel Corporation, testified that he contacted the head of the Kaiser Engineers, Inc. about a week before the accident happened; that he told him that he wanted to have the overhead cranes operating on a crane rail across the west end of the Merchant Mill Building stopped, and he wanted the electricity in the building shut off for a period, because he wanted to connect the new Column 29 with a similar column on the inside of the Merchant Mill Building; that he, Smith, was told that the "mill could not be shut down" and that the crane could not be stopped; that the person he contacted in reference to this complaint had "nothing to do with the operation of the steel mill." He

then testified that it was his duty to place the men and see that they were in proper positions to work and to take care of the construction work under the contract; that when he was informed that the electric cranes could not be stopped and would continue to operate, he stopped planning for the doing of any part of the work that was inside of the Merchant Mill Building until he could obtain a decision on what could be done; that the crew of which the deceased was a member commenced work on Column 29; that he "informed them there was a crane operating inside and it would not be stopped and they were not to take chances; that they were to work on the outside and not work inside and not place rivets where they would be caught by the crane"; that they were "not to do anything that would put them in a hazardous position with that crane until we got further orders"; that the riveting on Column 29 was done outside the building.

One witness was asked if he knew of his own knowledge whether or not Mr. Tice knew that there were cranes operating along those overhead crane tracks in the Merchant Mill Building, and he testified: "Yes, I imagine he did. The rest of the boys seemed to have known it." One of Tice's fellow ironworkers testified that he knew there were two overhead cranes working in the Merchant Mill Building; that he and Tice had a conversation about them when he went to work that day and that he told Tice to "watch it. . . . Don't let it get you. . . ."; that "I told him that when I was out there before that the crane liked to have got me out on this building"; that on that afternoon, previous to the accident, a crane came past Column 29 "more than once," three to six times. Plaintiffs produced two other workmen as their witnesses, who testified that they did not remember hearing such conversations or instructions by the foreman. Plaintiffs' witnesses, who were members of the iron working crew along with Tice, testified in minute detail as to the conduct of Tice, as well as themselves, from the time they started up from the foot of Column 29 until the accident occurred. According to their testimony, upon reaching the foot of Column 29, they erected a wooden float suspended outside the Merchant Mill Building by rope falls and commenced working up the outside of Column 29, lifting themselves on the float by manipulating the ropes. After about two hours they reached the level of the crane beam and tied off the float outside of Column 29. At that level, about 40

feet above the floor, the sash and siding of the west wall of the Merchant Mill Building was stripped off for about 5 or 6 feet equally on both sides of building Column 29, making openings big enough for a man to walk or crawl through on each side of the column. The crane was then stationary at the north end of the Merchant Mill Building with the operator visible inside the cab. These cranes in the Merchant Mill Building were used throughout the length of the large building in lifting heavy material from one place to another. They were equipped with sirens to notify the workmen below, so that when heavy material was about to pass over them they could remove themselves from beneath it.

It is defendant's argument that, in violation of the specific and positive orders given the deceased by his foreman Smith, the deceased went inside the west wall of the Merchant Mill Building. At that point he stood on a horizontal pipe north of building Column 29 with his waist about level with the inside crane rail which was about nine inches from the inside column, with his body between the rail and the wall of the Merchant Mill Building. From this position he leaned over, curling his body around the *inside* of the building column, and placing his chest and shoulders between the column and the inside rail to catch rivets being driven through the outside flange of the building column. His head and arms were south of the column and his back toward the crane at the north end. One of the workmen commenced to drive a drift pin through the holes in the south flange of the building column by means of a compressed air riveting gun. Tice was the only member of the riveting crew whose body was inside the building. While Tice was in this exposed position Machin operated the overhead electric crane south along the inside crane track and Tice was crushed between the moving crane and the building column. There is a conflict in the evidence as to whether the approaching crane moved silently or with considerable noise. The testimony of the crane operator indicates that it was his custom to sound the siren on certain occasions pertaining to the workmen on the floor; that his whole attention was given to these conditions, and that he had no reason to expect workmen to be on or near the overhead crane rail where the ordinary operation of the crane would endanger them, and that this was in accordance with the ordinary manner of operating overhead cranes.

It is the argument of counsel for plaintiffs that the unusual admission of sunlight through the entrances in the west wall of the building through which the deceased entered should have been sufficient in and of itself to place the operator of the crane on notice that workmen were working in that portion of the building and that he should have seen Tice and should have sounded the siren to notify him of the approaching danger. Plaintiffs further argue that the defendant, under the facts, and under this construction contract, had knowledge at the time of the accident that all of the work called for by the contract, including that portion in which decedent was engaged was being done, and was being carried on under the express invitation of the defendant under the contract, and that the negligence of the defendant is clearly shown.

It is our conclusion that the question of the negligence of the defendant company was a factual question for the determination of the jury. This evidence, as well as the evidence as to the contributory negligence of the deceased, was, in some respects, conflicting and susceptible of two constructions. Under these circumstances and under the rule above enunciated, the trial court had the right to grant a new trial, if, in its studied opinion, the weight of the evidence showed contributory negligence on the part of the deceased which would bar a recovery, or failed to show negligence on the part of defendant. Since there appears to be no abuse of discretion in this respect the determination of the trier of facts is conclusive.

The trial court, at plaintiffs' request, gave an instruction that ''the evidence in this case has established that the deceased . . . was what the law terms a 'business invitee' upon the premises of the defendant Kaiser Company,'' and followed this with an instruction as to the duty the defendant owed to a ''business invitee.'' The court rightfully concluded, on the motion for new trial, that the question of whether or not Tice was a ''business invitee,'' at the time and place of the accident, was not a question of law but a question of fact for the jury to determine.

The contract under which the Consolidated Steel Corporation was operating provided that that corporation was to erect the Alloy Finishing Building Extension, at owner's plant in Fontana, according to certain specifications. Badges were issued to employees of that corporation to enter the general admission gate. There is no showing that such a

pass gave these employees permission to enter the enclosed Merchant Mill Building, which was at the time in full operation. There may be some question whether, under the contract of construction, the employees of the Steel Corporation were expected to enter that building, at the point indicated, for the purpose of anchoring new Column 29 to the existing one in fulfillment of the contract. If we disregard the testimony of the witnesses in regard to the claimed orders given the workmen about going into that building until arrangements could be made to shut down the operations being carried on there, it might be said that, under the contract, the deceased could be held to be a "business invitee" in that building at that time and place. However, if we believe the testimony of the witnesses, these workmen, including the deceased, were warned that they were not to enter that building until some future time to be agreed upon. This would present a factual question for the jury to determine as to whether deceased was a "business invitee" at the time and place under the construction contract and the evidence produced. (*Martin* v. *Food Machinery Corp.*, 100 Cal.App.2d 244 [223 P.2d 293].)

The trial court's conclusion, on the motion for new trial, that the giving of the instruction as to the presumption of due care, under the evidence produced by plaintiff was error, is sustainable. The instruction reads in part:

"The law presumes that Roy Alfred Tice now deceased in his conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. . . ."

It should be here noted that plaintiffs produced the workmen employed on the job with the deceased at the time as their own witnesses and they testified in detail as to all the surrounding facts pertaining to the actions and conduct of the deceased up to the very time of his fatal injury.

Heretofore some confusion existed in relation to this presumption and its application. (See discussion of cases in note "Battle of the Presumptions," B.A.J.I. No. 135, p. 159, 161, and 1950 Supp., p. 113, No. 135.) The general rule is announced in *Mundy* v. *Marshall*, 8 Cal.2d 294, 296 [65 P.2d 65], that the manner in which the deceased was crossing the street having been covered by the plaintiff's own evidence,

there is no room for the operation of the presumption that he was exercising due care. It is said in *Paulsen* v. *McDuffie*, 4 Cal.2d 111, 119 [47 P.2d 709], that:

"What he did on that occasion was entirely covered by the evidence in the case, and there was neither necessity nor reason for indulging in any presumption on that subject."

In order to be entitled to such a presumption, the party relying upon it must first establish a sphere or field within which the presumption may operate. Whether the evidence introduced establishes such a field or sphere is, in the first instance, a question for the court. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529]; *Hoppe* v. *Bradshaw*, 42 Cal. App.2d 334 [108 P.2d 947].) The disputable presumption that a decedent exercises due care is dispelled, has no probative value, and disappears from the case when the litigant relying upon the presumption introduces evidence contrary to the fact presumed. (*Mundy* v. *Marshall, supra*; *Young* v. *Pacific Electric Ry. Co.*, 208 Cal. 568 [283 P. 61].) See, also, *Ellison* v. *Lang Transportation Co.*, 12 Cal.2d 355 [84 P.2d 510].

In *Speck* v. *Sarver*, 20 Cal.2d 585, 587 [128 P.2d 16], the clarified rule in respect to the application of such a presumption appears to be that an instruction as to the rebuttable presumption set forth in section 1963, subdivision 4 of the Code of Civil Procedure may properly be given to the jury in certain situations, but such an instruction should not be given where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question. The court there adopts the same rule that was applied in *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884]. See, also, *Cole* v. *Ridings*, 95 Cal. App.2d 136 [212 P.2d 597]; *Chakmakjian* v. *Lowe*, 33 Cal.2d 308 [201 P.2d 801]. No other errors appear.

Since a cause of action was stated, since it cannot be held, as a matter of law, that there was no evidence of negligence on the part of the defendant, and since it cannot be held, as a matter of law, that the deceased was guilty of contributory negligence contributing proximately to his death, the order denying defendant judgment notwithstanding the verdict is affirmed. The order granting a new trial is affirmed.

Barnard, P. J., and Mussell, J., concurred.