[Civ. No. 8083. Third Dist. May 2, 1952.]

VERA M. ANDERSON et al., Respondents, v. COUNTY OF SAN JOAQUIN, Appellant.

Blewett, Blewett & Macey, Jones, Lane & Weaver and Frederick L. Felton for Appellant.

Hoberg & Finger for Respondents.

SCHOTTKY, J. pro· tem.—This action was brought against appellant county by the surviving widow and children of Walter Anderson who was killed in an automobile accident alleged to have been caused by the defective condition of a county road. The jury returned a verdict in favor of plaintiffs in the amount of $50,000, and judgment was entered in that amount. Defendant's motion for a new trial was denied. The county has appealed from the judgment. This court in 97 Cal.App.2d 330 [217 P.2d 479], held that the claim filed by plaintiffs with the county sufficiently complied with the claims statute.

Appellant relies for a reversal of the judgment upon two main contentions: (1) that the evidence is insufficient to show that the county had actual or constructive notice of any dangerous or defective condition of the highway; and (2) that the court erred in giving to the jury an instruction on the presumption of due care of the deceased.

Before discussing these contentions we shall summarize briefly the evidence as shown by the record.

The accident occurred on the Kasson Road, a north-south county road which has existed for many years. The road is used as a short cut from U. S. Highway 50 to Modesto. The decedent was traveling in a southerly direction. At the place of the accident there is a slight curve to the west. At this curve the decedent lost control of his automobile and thereafter collided with a heavy truck proceeding in the opposite direction. There were various chuck holes in the pavement on this curve. Witness Northrup, a swamper riding in the truck, described the accident as follows: "I saw this car coming just the other side of the turn. He was, I presume, on the highway because the car was being handled all right and he come into the turn and the car started to bob and pitch around a little bit, and as he got in the middle of the turn, why, the car's bobbing got more violent and he come more around on our side yet. The right hand tires got off the highway onto the shoulder and then he come back onto the highway and come across the highway and collided with us."

The county engineer, Manthey, testified that he had driven over the road 30 days before the accident, and had noted

nothing unusual about its condition, i. e., didn't notice whether there was a drop from the pavement to the road shoulder; that he noticed nothing unusual in the condition of the road after the accident; that after the accident he observed no conditions requiring repairs; that chuck holes could occur in that road overnight. This witness testified that if he had seen such a condition as depicted by Plaintiff's Exhibit 3 (a photograph of the curve) he would have ordered it repaired.

Respondents produced several witnesses who testified in detail as to the condition of the road at the place of the accident, and the length of time the condition had existed. These witnesses were residents of the community and testified that the chuck holes at the curve were from 2 to 6 inches deep. These holes extended from the edge of the roadway into the traveled portion from 1 to 1½ feet. There was not space enough for an automobile to travel the right side of the road without hitting the holes. Witness Dethlefsen testified: "Well, as you approach the turn on the right hand side going south, there were a number of chuck holes about fifty feet on each side and right at the center of the turn they became deeper. It was impossible to pass a car on that turn without driving off the pavement and straddling the chuck holes, one wheel on the pavement and the other on the shoulder of the road," and "as a farmer, I usually carry a rule in my pocket and I made a point to measure it, and it was slightly under six feet from the center line to the edge of the pavement."

As to the length of time the defective condition had existed, the following testimony was given: Witness Brazil testified that he traveled the road two or three times daily, and the condition had existed from five to six months before the accident. Witness Aspussin testified the condition had existed about three or four months. Witness Dethlefsen testified that the condition had existed for two or three months. Another witness testified the condition had existed for "at least two months." Another witness placed the time at "a month or six weeks, or maybe longer."

Respondents contend that the evidence amply establishes both actual and constructive notice to the appellant county. They cite *Perry* v. *City of San Diego*, 80 Cal.App.2d 166 [181 P.2d 98], where the court quoted from *Fackrell* v. *City*

*of San Diego,* 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625], as follows:

"Actual notice of a defective or dangerous condition is not required. Constructive notice satisfies the statute. *(Laurenzi* v. *Vranizan* (1945), 25 Cal.2d 806, 812 [155 P.2d 633]; *Dawson* v. *Tulare Union High School* (1929), 98 Cal.App. 138, 142 [276 P. 424]; *Hook* v. *City of Sacramento* (1931), 118 Cal. App. 547, 553 [5 P.2d 643]; *Bennett* v. *Kings County* (1932), 124 Cal.App. 147, 153 [12 P.2d 47].) Constructive notice is defined by section 19 of the Civil Code as that knowledge of circumstances 'sufficient to put a prudent man upon inquiry as to a particular fact' where 'by prosecuting such inquiry, he might have learned such fact.' The rules governing such constructive notice require reasonable diligence in making inspections for the discovery of unsafe or defective conditions. *(Laurenzi* v. *Vranizan* (1945), *supra,* pp. 811-812; *Nicholson* v. *City of Los Angeles* (1936), 5 Cal.2d 361, 364-365 [54 P.2d 725].)"

In *Maddern* v. *City & County of San Francisco,* 74 Cal. App.2d 742 (hearing denied), the court said at page 752 [169 P.2d 425]:

"While it is true, as argued by defendant, that in practically all of the cases cited, a longer time than four or five days elapsed between the first evidence of a defect and the accident, we believe it is likewise true that there is no hard and fast rule as to the amount of time that must elapse before a court or jury will be justified in holding that a defendant had constructive notice of the dangerous and defective condition. What amounts to 'long continued neglect,' 'a considerable length of time' or 'an unreasonable length of time' are matters which must be determined in accordance with all the facts and circumstances of the particular case under consideration. What might be 'long continued neglect' or 'an unreasonable length of time' in one case might not be so in another, and we believe that under the authorities the true rule for an appellate tribunal to follow is that when reasonable minds may differ regarding the question as to whether defective conditions have existed for a sufficient length of time under the particular circumstances of a case to charge a municipality with constructive knowledge thereof, the conclusion of the jury in that regard may not be interfered with on appeal."

Appellant cites *Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361 [54 P.2d 725], and *Whiting* v. *National City,* 9 Cal.2d

163 [69 P.2d 990], in support of the contention that the county did not have notice of the defective condition. It was stated in the syllabus of the Nicholson case that "While a minor defect in a sidewalk may be dangerous to travel, it does not, by its mere existence, charge the city with constructive notice of its presence; and assuming that a finding of a dangerous and defective condition would be supported by evidence that there was a break in the sidewalk, with a difference in grade at the break of an inch and a half, such evidence will not support a finding that defendant had constructive notice of such condition for several months where there is no attempt to charge the city with actual notice and merely a showing that the defect had existed for several months," and "Where a city is charged with constructive notice of the defective or dangerous condition of a sidewalk on the basis of a duty to inspect, it must be made to appear that a reasonable inspection would have disclosed the defect or dangerous condition, that is, that had there been no neglect of duty there would have been actual knowledge on the part of the city officers a sufficient time before the accident to give reasonable opportunity to guard against it."

Respondent distinguishes these cases upon the ground that minor defects were involved, whereas in the present case the evidence shows substantial defects. The court states in *Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661, 673 [177 P.2d 558, 170 A.L.R. 225]: "The cases of *Nicholson* v. *City of Los Angeles*, 5 Cal.2d 361 [54 P.2d 725], and *Whiting* v. *City of National City*, 9 Cal.2d 163 [69 P.2d 990], have no application here in relation to the establishment of defendant's liability, where it cannot be said that the break in the sidewalk was a minor or trivial defect as a matter of law. [Cases.]"

In support of their contention that under the facts of the instant case the appellant county had actual notice of the defects, respondents cite *Hook* v. *City of Sacramento*, 118 Cal. App. 547, where the court said at page 553 [5 P.2d 643]:

"Mrs. Meredith testified that the hole or depression had existed in the same condition since September or October, 1929. The accident happened on December 6, 1929. Having made inspections each month, Hageman must have seen the hole. It is inconceivable that a man engaged in examining and inspecting streets and sidewalks would overlook a defect 18 inches to 2 feet long. Therefore, sufficient evidence was shown that appellant had actual knowledge of the existence

of the dangerous and defective condition of said apron for at least two months prior to the accident.''

■ We believe that the evidence was sufficient to show that appellant county not only had constructive notice but also that it had actual notice. The following analysis made by the learned trial judge in denying the motion for a new trial is amply supported by the record:

"It was established, by a preponderance of the evidence, that such defect existed; that it had existed for several months and that it was dangerous in character. Several witnesses testified they had narrowly escaped serious accidents at the same place. It was further shown that the county maintained a system of inspection for its secondary highways and that no reports of the defect had been made by any of its inspectors to the highway maintenance department. Plaintiff, therefore, relied on constructive notice, namely, that the dangerous defect had existed for so long a time that it could and would have been discovered and repaired had the county's agents exercised due care and performed the duties devolving upon them in a reasonably efficient manner. By its verdict the jury found that the county knew, or in the exercise of due care should have known, that the defect existed and that it was a dangerous hazard to the safety of the public.

"On this phase of the case the evidence was virtually undisputed. . . .

. . . . . . . . . . . . . .

". . . the law is well established that if the defect relied upon is so minor in character that it will escape the attention of an ordinarily prudent person charged with the responsibility of discovering and remedying defects in highways, the doctrine of constructive notice does not apply. But, in the instant case the jury found that the defect was not inconspicuous. It did not occur overnight because several people living in the vicinity testified that it had existed for several months and that they themselves had experienced minor accidents there. The jury was carefully instructed on this aspect of the question and found that the county knew, or in the exercise of due care should have known, that the defect existed, that it was dangerous in character, and that unless remedied could bring disaster to persons lawfully upon the highway and themselves exercising due care.''

■ The language of this court in *Murphy* v. *County of Lake,* 106 Cal.App.2d 61, at page 67 [234 P.2d 712], is quite applicable to the instant case: ''Whether or not a dangerous

condition exists and whether or not the county has had actual or constructive notice thereof are questions of fact for the jury, and their verdict will not be disturbed on appeal if it is supported by substantial evidence. (*Bigelow* v. *City of Ontario, supra* [37 Cal.App.2d 198 (99 P.2d 298)]; *Rowland* v. *City of Pomona*, 82 Cal.App.2d 622 [186 P.2d 447].) In the present case, in view of the narrowness of the road, there can be no question but that the unpaved shoulder necessarily would have to be traveled on by larger vehicles when passing other cars. There was evidence that the generally dangerous condition of the 'Soda Bay Road' was known in the locality and had been brought to the attention of the supervisors of the county at least a year prior to the accident. Furthermore, there was evidence that the type of construction of the shoulder created an inherently dangerous condition. Upon a thorough examination of the record we conclude that there was substantial evidence to support the implied finding of the jury that the accident resulted from a dangerous or defective condition of the road of which the county of Lake had notice.''

 Appellant next contends that the court erred in giving the following instruction on the presumption of due care of the deceased:

''You are instructed that the law presumes that Walter Anderson, deceased, at the time and place of the happening of the accident in question, exercised due care for his own safety and protection, and that such presumption, unless and until dispelled by competent evidence, is itself evidence in the case which you must take into consideration in your deliberations respecting a verdict. If such presumption has not been dispelled by competent evidence, then it is your duty throughout your deliberations in this case to presume that decedent at the time and place in question acted as an ordinarily prudent person would have acted under the same or similar circumstances.''

Appellant argues that the evidence introduced by respondents disclosed the acts and conduct of deceased in detail. Appellant relies principally upon the case of *Tice* v. *Kaiser Co.*, 102 Cal.App.2d 44 [226 P.2d 624], which was a wrongful death case, in which a new trial was granted defendant upon the grounds of insufficiency of the evidence and the giving of an instruction on the presumption of due care. Upon appeal the court said:

''The trial court's conclusion, on the motion for new trial, that the giving of the instruction as to the presumption of due

care, under the evidence produced by plaintiff was error, is sustainable. . . .

. . . . . . . . . . . .

"It should be here noted that plaintiffs produced the workmen employed on the job with the deceased at the time as their own witnesses and they testified in detail as to all the surrounding facts pertaining to the actions and conduct of the deceased up to the very time of his fatal injury.

"Heretofore some confusion existed in relation to this presumption and its application. (See discussion of cases in note 'Battle of the Presumptions,' B.A.J.I. No. 135, p. 159, 161, and 1950 Supp., p. 113, No. 135.) The general rule is announced in *Mundy* v. *Marshall*, 8 Cal.2d 294, 296 [65 P.2d 65], that the manner in which the deceased was crossing the street having been covered by the plaintiff's own evidence, there is no room for the operation of the presumption that he was exercising due care. It is said in *Paulsen* v. *McDuffie*, 4 Cal.2d 111, 119 [47 P.2d 709], that:

" 'What he did on that occasion was entirely covered by the evidence in the case, and there was neither necessity nor reason for indulging in any presumption on that subject.'

"In order to be entitled to such a presumption, the party relying upon it must first establish a sphere or field within which the presumption may operate. Whether the evidence introduced establishes such a field or sphere is, in the first instance, a question for the court. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529]; *Hoppe* v. *Bradshaw*, 42 Cal. App.2d 334 [108 P.2d 947].) The disputable presumption that a decedent exercises due care is dispelled, has no probative value, and disappears from the case when the litigant relying upon the presumption introduces evidence contrary to the fact presumed. (*Mundy* v. *Marshall, supra*; *Young* v. *Pacific Electric Ry. Co.*, 208 Cal. 568 [283 P. 61].) See, also, *Ellison* v. *Lang Transportation Co.*, 12 Cal.2d 355 [84 P.2d 510].

"In *Speck* v. *Sarver*, 20 Cal.2d 585, 587 [128 P.2d 16], the clarified rule in respect to the application of such a presumption appears to be that an instruction as to the rebuttable presumption set forth in section 1963, subdivision 4 of the Code of Civil Procedure may properly be given to the jury in certain situations, but such an instruction should not be given where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question. The court there adopts the same rule that was applied in *Rogers* v. *Interstate Transit Co.*,

212 Cal. 36 [297 P. 884]. See, also, *Cole* v. *Ridings,* 95 Cal. App.2d 136 [212 P.2d 597]; *Chakmakjian* v. *Lowe,* 33 Cal.2d 308 [201 P.2d 801]. No other errors appear.''

Appellant submits ''that the rule of the Tice case, as stated above, is now the law of California'' and that it has cleared up the confusion that theretofore existed. For that reason appellant states that it would be an unreasonable burden upon the court's time to cite the prior decisions of the Supreme Court in *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590], *Anthony* v. *Hobbie,* 25 Cal.2d 814 [155 P.2d 826], and other cases relied upon by respondent.

In *Westberg* v. *Willde, supra,* the court said at page 365:

''From these decisions, and others of this court which might be cited, the rule is firmly established in this state that a presumption is evidence and is sufficient to support a verdict of a jury or a finding of the court, unless overcome by satisfactory evidence. (*People* v. *Milner,* 122 Cal. 171 [54 P. 833]; *Sarraille* v. *Calmon,* 142 Cal. 651 [76 P. 497]; *People* v. *Siemsen,* 153 Cal. 387 [95 P. 863]; *Pabst* v. *Shearer,* 172 Cal. 239 [156 P. 466]; *Thompson* v. *Davis,* 172 Cal. 491 [157 P. 595]; *Gilmour* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 P. 1066]; *Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 P. 393]; *Mar Shee* v. *Maryland Assur. Corp., supra* [190 Cal. 1 (210 P. 269)]; *Pacific Portland Cement Co.* v. *Reinecke,* 30 Cal. App. 501 [158 P. 1041]; *Grantham* v. *Ordway,* 40 Cal.App. 758 [182 P. 73].)

''In the case of *Mar Shee* v. *Maryland Assur. Corp., supra,* this court had before it the question as to whether the presumption in favor of one of the parties to said action had been 'overcome by satisfactory evidence'. In that case the rule was announced that 'a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.'

''In the instant case the defendants do not contend that as a matter of law decedent must be held to have been guilty of contributory negligence. That is, they do not urge that the evidence is 'wholly irreconcilable' with the presumption. It was therefore no error to give the questioned instructions under those circumstances. (*Ellison* v. *Lang Transp. Co.,* 12 Cal.2d 355 [84 P.2d 510].)

"The further claim is made that the giving of the said instruction was improper, in view of the fact that the witnesses on behalf of respondents and those of the appellants testified fully as to the acts and conduct of the deceased at the time of and immediately prior to the collision, and therefore that there was no place for a presumption as to his conduct on that occasion. *Mundy* v. *Marshall*, 8 Cal.2d 294 [65 P.2d 65], is cited in support of this last mentioned contention. In that case, however, the court held that, 'There is only one reasonable conclusion to be drawn from the facts established by the' testimony of the plaintiff's own witness'. That conclusion was that the deceased in that action had been guilty of contributory negligence. In other words, the court concluded that the deceased's negligence was established by 'uncontradicted testimony' of the witnesses of the plaintiff, and the case was therefore brought within the rule of the Mar Shee case.

". . . But in the other situation, where the acts and conduct of a deceased person are the subject of inquiry, and the testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, unless such testimony meets the requirement of the rule in the Mar Shee case, and other cases decided by this court following the Mar Shee case, an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is not only proper but this court in an unbroken line of decisions, has sustained the giving of such an instruction. (*Ellison* v. *Lang Transp. Co., supra.*)"

And in *Anthony* v. *Hobbie, supra,* the court said at page 819:

"In the instant case, disregarding the testimony of defendant under section 2055, which is unfavorable to plaintiffs, the most that appears from plaintiffs' evidence is that at the time of the accident decedent was on the highway probably near the middle thereof, and defendant was driving on his right hand side of the road. It does not appear whether decedent was standing there for no purpose, was in the process of walking across the highway, or was endeavoring to flag down a passing motorist for assistance. It may be true that he was in a place of danger, but that is true of any pedestrian on the highway at night or in the daytime. Merely being on the highway is not necessarily negligence on his part. It may have been that he was there for a legitimate purpose, such as crossing the highway, and that he was observant of

oncoming traffic, but was blinded by defendant's headlights, or misjudged defendant's speed. Those conditions would indicate a lack of contributory negligence rather than its existence. At most it cannot be said that merely being afoot on a highway at night alone leads to only one possible conclusion, that is, contributory negligence; or that if it was negligence, it proximately contributed to the accident. Hence, it cannot be said the plaintiffs' evidence established contributory negligence as a matter of law. But in addition to the foregoing, even the evidence elicited from defendant does not necessarily establish that conclusion. He testified that when he saw decedent he was three feet *west* of the center line and facing east. If so, he may well have been in a proper position waiting for defendant to pass, or may have been endeavoring to flag defendant down to obtain assistance for the parked car which was stuck in the mud.

"The plaintiffs are entitled to the aid of the presumption that decedent used due care for his own concerns. (Code Civ. Proc., § 1963(4).) The case was a proper one for the application of that presumption. (*Westberg* v. *Willde,* 14 Cal. 2d 360 [94 P.2d 590].) That such presumption was not dispelled from the case is obvious from the foregoing discussion showing that plaintiffs' own evidence did not show decedent was guilty of contributory negligence as a matter of law. Certainly if he was not guilty of contributory negligence as a matter of law, there is no evidence completely refuting the presumption that he was not. The rule is stated in *Westberg* v. *Willde, supra,* 365, quoting from *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 P. 269] :

" ' " . . . a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case."

" 'In the instant case the defendants do not contend that *as a matter of law decedent must be held to have been guilty of contributory negligence.* That is, they do not urge that the evidence is "wholly irreconcilable" with the presumption. It was therefore no error to give the questioned instructions under those circumstances.' (Italics added.) We have seen that in the instant case the evidence is not wholly irreconcil-

able with the exercise of ordinary care by decedent, but is in fact compatible with it."

In *Scott* v. *Sheedy*, 39 Cal.App.2d 96 [102 P.2d 575] (hearing in Supreme Court denied), the court, in approving the giving of an instruction on the presumption of due care, said at pages 101-102:

". . . In other words, notwithstanding the evidence from other witnesses, 'all possible facts both in favor of and against the alleged negligence of the plaintiff' (*Westberg* v. *Willde, supra*) were not before the court. In this case no witness could have testified that plaintiff saw the danger. A witness might place him in a position from which an inference might be drawn that he could see or realize danger, but that would not be sufficient if a reasonable inference otherwise could be drawn. If the acts and conduct of an incapacitated party must be testified to by other witnesses, we conclude that the test given in the Westberg case and in *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 P. 269], is proper. In the Mar Shee case, the court (p. 9) said: '. . . we deduce that a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.'

"Examining the testimony of plaintiff's witnesses on the subject of whether or not plaintiff was guilty of contributory negligence, we find that all witnesses agree that defendant Hagen drove through the opening only after plaintiff had given him a hand signal. This act of hand signalling as a matter of law would not be sufficient under the facts of this case to find plaintiff guilty of contributory negligence unless it might be assumed that it was a guarantee that the space through which the truck was to pass was of sufficient width, when it may have been proven that as a fact it was not. However, the evidence shows that if the truck had been properly centered, there would have been ample clearance on each side. (*Wiley* v. *McNab & Smith*, 8 Cal.App. 135 [96 P. 332].) The evidence from which a conclusion of contributory negligence on the part of plaintiff might be drawn was produced by witnesses called on his behalf. There was some difference in the testimony as to the number of signals given, and a slight variation as to the position occupied

by plaintiff at the time of the accident. Some of the witnesses noted the direction in which plaintiff turned his head. When considered as a whole, we cannot conclude as a matter of law that contributory negligence was or was not established by the uncontradicted testimony of the witnesses, or that the facts proven were wholly irreconcilable with the disputable presumption given in the court's instructions. (*Mar Shee* v. *Maryland Assur. Corp., supra; Westberg* v. *Willde, supra.*)''

In the case of *Tice* v. *Kaiser Co., supra,* so strongly relied upon by appellant, there was no petition for a hearing in the Supreme Court, and the opinion makes no mention of the cases of *Westberg* v. *Willde,* and *Anthony* v. *Hobbie.* The court stated at page 51 that ''plaintiff's witnesses testified in detail to all of the surrounding facts pertaining to the actions and conduct of the deceased up to the very time of his fatal injury,'' and the court then held that the instruction of the presumption of due care should not have been given because it ''is dispelled, has no probative value and disappears from the case when the litigant relying upon the presumption introduced evidence contrary to the fact presumed.'' If by the phrase ''evidence contrary to the fact presumed'' is meant evidence which is ''wholly irreconcilable with the presumption sought to be invoked,'' then it may be that, upon the record in the Tice case, which is not before us, the instruction should not have been given in that case, but we do not believe that, in view of the decisions of our Supreme Court heretofore cited (which as an intermediate appellate court we are bound to follow), we would be justified in holding that the giving of the instruction was error in the instant case. For the following résumé of the facts by the trial court, amply supported by the record, shows clearly that the evidence produced by plaintiff was far from ''irreconcilable with the presumption sought to be invoked'':

''. . . The highway had the usual white line in the center and yet it was so narrow that two cars approaching from opposite directions could not pass without one of them leaving the improved surface. The decedent, who was not familiar with the highway, suddenly discovered that he could not avoid an accident by merely remaining on his side of the white line, as one would ordinarily assume; and it was when he turned slightly off the improved surface that he struck the hole and lost control of the car. This hole, which was subsequently measured and the dimensions thereof brought to the

attention of the jury, had actually eroded into the improved surface.

"The driver of the truck and his helper both testified that decedent, just prior to the accident, was operating the car in a normal manner and was entirely on his side of the highway until he struck the hole, at which time the car veered over into the path of the truck. Strenuous efforts were made by defendant's counsel to impeach these two witnesses by showing that they had each previously given an entirely different version of the 'normal' manner in which decedent's car was being driven. One of them admitted frankly that at the time he sought to cast blame upon the decedent he was under the impression that he and his associate were liable to a charge of manslaughter and he had shaded his story with the view of protecting himself. Defendant came no nearer than this to establishing contributory negligence, and the jury believed that the two witnesses were telling the truth when they testified at the trial."

We conclude, therefore, that the court properly instructed the jury that plaintiff was entitled to the benefit of the presumption that the deceased was exercising due care for his safety and protection at the time of the accident.

In view of the foregoing we are satisfied that the record amply supports the implied findings of the jury that the highway was in a dangerous and defective condition, that appellant county was aware or should have been aware of such condition and did not correct it, and that the death of deceased was due to the negligence of defendant county. The jury was fully and correctly instructed.

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1952. Traynor, J., was of the opinion that the petition should be granted.