[Civ. No. 22388.   Second Dist., Div. Three.   Feb. 5, 1958.]

AURILEO LAZZAROTTO, Appellant, v. ATCHISON, TO-PEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Robertson, Harney, Drummond & Dorsey for Appellant.

Belli, Ford & Ashe and Robert E. Ford as Amici Curiae on behalf of Appellant.

Robert W. Walker, William F. Brooks and Louis M. Welsh for Respondent.

SHINN, P. J.—At about 1:10 in the morning of January 22, 1955, plaintiff drove his sedan into the side of defendant's freight train, wrecking the automobile and causing plaintiff severe injuries. In this action for damages upon a complaint charging negligence, defendant denied negligence and pleaded the contributory negligence of plaintiff. The cause having been submitted to a jury a verdict was rendered in favor of plaintiff for $30,000; judgment on the verdict was entered and in due time defendant made a motion for judgment notwithstanding the verdict and a motion for a new trial. The motions were heard at the same time and both were granted. Plaintiff has appealed from both orders. Under the procedure of section 629 of the Code of Civil Procedure, the order granting defendant's motion for a new trial would be operative only in the event the judgment notwithstanding the verdict should be reversed. Plaintiff seeks a reversal of both orders and reinstatement of the judgment on the verdict. Defendant defends both orders. Our attention will be directed first to the order granting judgment notwithstanding the verdict. We shall assume for the purpose of our discussion that no bell was rung and no whistle was blown and that the defendant was therefore guilty of negligence which was a proximate cause of the accident. Under the rule of law that is so well-established and familiar to all practicing lawyers as to need no elaboration the sole question is whether under an interpretation and application of the evidence and inferences most favorable to plaintiff it could have been determined upon any reasonable theory that plaintiff was free from con-

tributory negligence. We shall consider the evidence in the light of that rule.

Defendant's railroad extends northwesterly and southeasterly. At a point approximately 5 miles east of Blythe in Imperial County, the tracks are crossed by Lovekin Avenue, a two lane paved road. Lovekin Avenue extends easterly and westerly and the angle of its intersection with the tracks is about 60 degrees. Plaintiff's sedan was traveling westerly. To the north of Lovekin Avenue, easterly of the intersection, there is a high bluff which is located beyond the tracks but which would prevent a train from being silhouetted against the sky. In this vicinity, between Lovekin Avenue and the tracks, there is sparse desert brush, but the tracks themselves are not obscured from view. At a point about 475 feet east of the intersection Lovekin Avenue curves slightly towards the south. From a distance of 400 feet easterly on Lovekin, and in broad daylight, one would be able to see the track to the north of the crossing for a distance of 600 or 700 feet from the crossing. On the left from a point 400 feet easterly of the tracks one would be able to see them for a distance of 150 or 200 feet. The tracks there curve toward the west. There were some 38 cars in the freight train; it was about one-half mile in length and plaintiff's sedan struck the seventeenth or eighteenth car. At that time the caboose was about one-fourth of a mile from the crossing and the locomotive was about one-fourth of a mile beyond it. There was no artificial illumination of the crossing nor any wigwag, flashing lights, gates or automatic signal devices to give warning to motorists of the approach of trains. One approaching from the east would have a clear view of the tracks from a point 475 feet distant from the intersection. Lovekin Avenue slopes slightly upward toward the west but the tracks at the intersection are on the same level as the road; 475 feet east of the intersection there was a post with a round reflectorized warning sign indicating a railroad crossing. It had a cross with numerous reflectors and two large letters "R." At about 375 or 400 feet east of the crossing there was a white painted sign on the pavement consisting of two white lines extending across the right half of the road and between the lines, a large white cross within which are two large white letters "R." About 15 feet east of the crossing there was a crossarm 7 feet tall with reflectors and with the words "railroad crossing" painted in black upon a white background; adjacent to the crossarm was a post, with two red glass reflecting buttons.

Lazzarotto was 42 years of age; he lived at Midland in the vicinity of the accident, and was employed by United States Gypsum Company as a miner; he had been using Lovekin Avenue for six years and had crossed the railroad tracks at the intersection 250 or more times. On the day preceding the accident he had arisen at 5:15 a. m., had started work at 5:30, was through at 2:30; he went to his home, had a shower, had something to eat and drove to Blythe, arriving there about 5 p. m. Between 7:30 and 12:30 p. m., he was drinking and playing poker. During this time he drank five or six bottles of beer. After he left the poker game he ate a meal and then started home. He had his driving lights on high beam; at a point some 500 feet easterly of the crossing he observed an automobile coming from a side road; he dimmed his lights and did not thereafter put them on high beam. When he was at the curve some 500 feet from the tracks he might have been going 50 or 55 miles per hour, but he slowed down to 40, 45 or 50 miles per hour. When he was about 250 feet from the tracks he noticed the wheels of the train and put on his brakes; the car left skid marks for 108 feet, which extended up to the point where he collided with the train. He testified he had seen the warning signs on former occasions but that he did not look at them or pay any attention to them on the night in question. He testified further that when he first saw the train at a distance of some 250 feet he could have stopped his car but that he tried to stop, applied his brakes, and that he did not know why he had been unable to stop before striking the train. He was not sleepy and was not intoxicated. He was paying attention only to the driving of his car. All the windows of his car were closed; he heard no whistle or bell and saw no light of the train, nor did he hear the noise it was making. In view of his speed of 50 miles per hour and the speed of the train of 25 miles per hour, Lazzarotto would have been half a mile away when the locomotive reached the crossing. He was not listening for any warning nor expecting one. There was expert testimony that plaintiff's car was traveling about 5 miles per hour at the time it struck the train and it was dragged about 72 feet.

In their briefs the parties have cited some 40 decisions of the Supreme Court and District Courts of Appeal to enlighten us with respect to the applicable principles of law. Upon the question of contributory negligence plaintiff strongly relies upon the decision in *Peri* v. *Los Angeles Junction Ry. Co.*, 22 Cal.2d 111 [137 P.2d 441]. He says: "The factual analogy

between the Peri case, *supra,* and the instant case is striking."
We do not find it so.  It was said in that case (p. 116) :  "A
heavy fog pervaded the atmosphere in the vicinity which,
together with other circumstances, limited the field of visi-
bility to from 5 to 10 feet for dark objects and from 35 to 50
feet for lighted objects.  It was dark and there were no street
lights or lights of any character burning in the entire vicinity.
. . . Plaintiffs were passengers in an automobile driven by
Mr. Guida.  He was driving his car north on the highway in
the lane next to the center line at a speed of 15 miles per
hour.  The lights of his car were illuminated.  He was lean-
ing over the steering wheel peering ahead as he approached
the crossing.  Guida observed the train on the crossing when
about 15 feet therefrom.  He swerved to the right and applied
his brakes but nevertheless collided with the train."  The court
concluded that Guida was not guilty of contributory negli-
gence as a matter of law.  What is striking about the facts
in Peri and those of the present case, with respect to the
conduct of the two drivers and the surrounding conditions, is
their dissimilarity.  Upon the other hand defendant says that
"the case of *Koch* v. *Southern California Ry. Co.* (1906), 148
Cal. 677 [84 P. 176, 113 Am.St.Rep. 332, 7 Ann.Cas. 795,
4 L.R.A.N.S. 521], fully controls the case at bar."  Plaintiff
in that case, after dark, was driving a team attached to a
light spring wagon at "a pretty fair trot" (about 6 miles
per hour) when he collided with a train traveling at a slow
speed, the engine of which "was laboring heavily to get under
way on the up-grade and 'was puffing very hard with a loud
exhaust.' "  The horses, of course, could have been brought
to a halt abruptly, but the plaintiff made no effort to stop
them nor did he see the train until "the noses of his horses
were about on the railroad tracks."  Obviously, these are not
the facts of our case.  There is, however, a fact common to
the two cases, namely, the statement of Koch "My main idea
was to get home.  I was not paying any attention to any-
thing."  All the cases cited by plaintiff upon contributory
negligence hinged upon some fact or facts with respect to the
conduct of the one charged with negligence which was con-
sistent with the exercise of ordinary care.  There were as
many different factual situations as there were accidents.  The
cases upon contributory negligence relied upon by defendant
are merely those in which the conduct evidenced an entire
absence of any precautions taken in view of immediate danger.
In these two lines of cases the principles of law were the

same; they differed only with respect to the controlling facts; and it is the special facts of each case that control. There is little to be gained in a comparison of the reasonableness of conduct of the parties in the case that is under review with the actions of the parties in a myriad of cases involving negligence, since there are in every case important facts peculiar to that case alone. We have merely to decide whether there was evidence that plaintiff Lazzarotto took any precautions whatsoever which would have been taken by one of ordinary prudence to save himself from injury. We have been unable to discover that his conduct in any respect was that of a reasonably prudent person.

We are of the opinion it was the duty of the court to grant defendant's motion for judgment notwithstanding the verdict. It appears to us to be an inescapable conclusion that plaintiff was guilty of contributory negligence. He argues that the evidence disclosed that he used some care and, therefore, it was a question for the jury whether the care he exercised was that of a reasonably prudent person. It would appear from his own testimony that he neglected to take any of the precautions which would have saved him from the accident. He knew where the crossing was located and he was familiar with the warning signs. We have mentioned that at a point 475 feet easterly of the tracks Lovekin Avenue curves slightly toward the south. Photographs of the scene show that the circular reflectorized sign we first mentioned was located at about the point where the road straightened out after the curve; due to its location one approaching the gradual curve and upon entering it could have seen the reflectorized sign directly in front of him. Plaintiff had been without sleep for 20 hours, during which he had spent 9 hours, less lunch time, working as a miner. Although he testified that he was not sleepy, he did not attempt to explain his failure to pay attention to the warning signs. He knew trains ran on the track, although he had never before met one at the intersection. He testified that he was thinking only of his driving and it is obvious that he was not thinking about the railroad crossing. But the signs were there for him to see; he was familiar with them and yet paid no attention to them. There was some wind and it was blowing some sand, but plaintiff did not testify that this interfered with his vision or distracted his attention. His only explanation of his failure to discover his danger until it was too late was that it was a dark night. The train was unlighted except at the

front and rear ends, neither of which was in plaintiff's view. Everyone who is competent to travel the highway by motor knows that an unlighted train crossing a roadway in the night-time creates an exceedingly dangerous situation. The danger, of course, is much greater to one who does not know of the crossing and comes upon it unexpectedly. It is for them primarily that the warning signs are maintained, but they are also maintained for the benefit of those who, while know-ing of the proximity of the tracks, may be momentarily forget-ful. Plaintiff was driving at a speed which would not have been unreasonable under normal conditions, and yet his speed directly contributed to the accident. The tire marks on the pavement, which extended for 108 feet, attest to the fact that plaintiff's failure to bring his car to a stop was not due to the faulty condition of his brakes. His headlights were on low beam, and this normally would not have constituted negligence, but if they had been on high beam he would have been able to see the train crossing at a distance greater than 200 or 250 feet, and could probably have stopped in time to avoid a collision. Apparently he did not realize that it would be safer to have his lights on high beam as he approached the railroad track. When we analyze his testimony for the dis-covery of some conduct consistent with the exercise of ordinary care we find that plaintiff thought of nothing, observed nothing, anticipated nothing and did nothing to save himself from an accident until he was so near the train that he was unable to stop in time. ■ Momentary forgetfulness is not necessarily negligence. It may be in accord with the conduct of a reasonably prudent person. (*Austin* v. *Riverside Port-land Cement Co.*, 44 Cal.2d 225 [282 P.2d 69].) But forgetful-ness cannot be urged as an excuse for conduct that could not be expected of a reasonably prudent person. Forgetfulness of a driver of an automobile to look for approaching traffic before entering an intersection or in attempting to pass a vehicle ahead, amounts to negligence. Any other rule would be absurd. ■ So, too, the failure to look for trains when approaching a railroad track, the location of which is well known, is negligence because it exhibits an extreme and un-usual lack of prudence and caution. Indifference and a conscious disregard of familiar surroundings which spell danger cannot be called momentary forgetfulness. Moreover, plaintiff did not testify that he was mistaken as to the part of the highway he was on, or that he was forgetful of the signs or the proximity of the tracks. Having traveled the

road more than 250 times in both directions he could not have failed to know that the tracks were located just beyond the curve. The reflectorized warning sign, as we have stated, would have been seen if he had looked straight ahead as he entered the curve. It is an inescapable fact that the state of plaintiff's mind was one of complete indifference to his surroundings. It is true that when he saw the train he endeavored to stop and could not, but it was his negligence which put him in that unfortunate position. Although plaintiff argues that he exercised *some* care and that the question whether it was sufficient was for the jury to decide, in his briefs he mentions nothing he did to avoid an accident except to apply his brakes when he saw the train. Until that time he was completely indifferent to his surroundings. It did not occur to him that he might encounter a train. And yet he contends that this was the exercise of care for his own safety.

█ A motorist whose negligence has placed him in such a position that an accident is unavoidable cannot excuse his negligence by a belated effort to escape when it is too late.

To permit a recovery by plaintiff upon the facts of this case would set a precedent which would allow any motorist to recover damages when he had driven into an unlighted train at a crossing, with which he was familiar, without taking any precautions whatsoever to save himself from injury until it was too late to avoid an accident. Such, of course, has never been the law.

We cannot pass unnoticed statements in plaintiff's brief that are highly improper. They refer to the orders as "a wanton abuse of discretion" and as "arbitrary, intemperate, flagrant and capricious." There are other statements which impugn the motives of the trial judge. Counsel for plaintiff say they believe it to be their duty to "strongly attack the trial court," and that a failure to do so would be an injustice to their client. This proffered excuse would have been more plausible had they been able to conceal their rancor. The fact is that the trial judge, far from acting arbitrarily, filed a memorandum opinion in which he made a fair and comprehensive statement of the evidence and gave his reasons for granting the motions. It was his duty to rule as his judgment and conscience dictated. The criticism to which he has been subjected is inexcusable. And we may add that counsel who wrote plaintiff's briefs should not have assumed that we would be influenced by their epithets.

The judgment in favor of defendant entered pursuant to the order granting defendant's motion therefor is affirmed. The

appeals from that order, and from the order granting defendant a new trial are dismissed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied March 4, 1958. Vallée, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied April 2, 1958. Carter, J., was of the opinion that the petition should be granted.