[Civ. No. 23540.   Second Dist., Div. One.   May 19, 1959.]

MARIA E. MEREY, a Minor, etc., et al., Respondents, v. LOS ANGELES TRANSIT LINES (a Corporation) et al., Appellants.

David S. Smith for Appellants.

Jarrett & Morgan and William Marshall Morgan for Respondents.

FOURT, J.—This is an appeal from a verdict and judgment wherein the minor plaintiff, Maria E. Merey (hereinafter referred to as Maria), was awarded damages in the sum of

$18,500, and Imre G. Merey (hereinafter referred to as "father") was awarded damages in the sum of $4,236.16.

A résumé of the facts is as follows: The collision occurred at approximately 8:42 a.m., on December 5, 1956, in the east-west crosswalk paralleling the northerly curb of Adams Boulevard at the intersection of South Broadway and Adams Boulevard in the city of Los Angeles. At the intersection in question, Broadway is 60 feet wide and Adams Boulevard is 52 feet wide. The intersection had traffic control trilights in operation, the time interval being 27 seconds for "go" or green, three seconds for yellow or "caution" and 30 seconds for red or "stop." There were marked crosswalks, each of which was 17 feet wide.

Maria, at the time of the collision, was an 18-year-old high school girl, and was on her way to school. She had been a passenger on a bus northbound on South Broadway, and had alighted at the bus stop located south of the southeast corner of the intersection. She had walked northerly to the intersection where the signal was green, and as she walked northerly across Adams Boulevard, the light changed to yellow when she was about four to five feet from the curb at the northeast corner of the intersection. She testified in effect that she stood on the sidewalk on the northeast corner of the intersection because the light was red for her and waited, but not very long, until the light on the northwest corner of the intersection changed to green for her, and then she commenced walking westerly across South Broadway. She also testified, among other things, as follows: "I looked straight ahead to see if the light was for me, to go;" ". . . I was looking at the light;" "The light changed to green so, as I say, the green is for the pedestrian to cross, so I crossed the street." Somewhere in the crosswalk approximately five to ten feet west from the easterly curb of South Broadway, she was struck by a bus traveling northward on South Broadway. She did not hear any noise like the sound of a horn, nor did she see the bus prior to the impact, and the next thing she remembered she was lying in the street, and her foot was all red, and later she was taken in an ambulance to Georgia Street Hospital.

The bus was 35 feet long and 8 feet wide, and had a seating capacity of 48 passengers. According to the testimony of the bus driver Earl Cross, there were a few passengers standing in the bus when he stopped at the bus stop south of

the southeast corner of the intersection; the light on the northeast corner of the intersection was green, and he discharged one passenger from the rear door of the bus and one passenger got on at the front door. The bus stop was about 5 feet south of the southerly curb of Adams Boulevard. Cross also testified that he first noticed Maria walking in the north-south crosswalk approximately 5 to 10 feet from the edge of the northerly curb of Adams Boulevard, at which time his bus was traveling between 5 and 10 miles per hour in the curb lane proceeding in a northerly direction on South Broadway, that the front of his bus was approximately in the middle of the intersection, and that at approximately the same time he saw the signal change to yellow. He then took his eye off Maria, continued straight ahead and accelerated his speed to approximately 10 miles per hour. When he again noticed Maria she was walking straight ahead in the north-south crosswalk and was just a step or two from the northeast corner of the intersection, at which time the bus was approaching or was at the edge of the southerly boundary of the east-west crosswalk paralleling the north curb of Adams Boulevard, and that at this time he saw the color of the signal change to red. He stated that there was a spot between the windshield of the bus and the doorway where he couldn't see and that he caught a glimpse of Maria through the door and when he saw her turn in the street to go across South Broadway, he swerved the bus, and when he struck Maria she was approximately 7 feet north of the extension of the Adams Boulevard northerly curb line and approximately 10 feet west of the south Broadway easterly curb line. When he brought the bus to a stop, it was approximately in the middle lane at about the northerly line of the east-west crosswalk. When he got out of the bus, Maria was lying in the street alongside the bus. He did not recall what he told the police officer at the scene of the accident.

The accident was investigated by a patrol officer of the Los Angeles Police Department, John Joseph Kramer, who, at the time of the accident, was on duty one block away at the intersection of Main Street and Adams Boulevard. He testified that he tried to determine the point of impact and that he did so by locating flesh and blood and red coloring from Maria's shoe which was ground into the cement at a point 10 feet west of the east curb line of South Broadway and 7 feet north of the north curb line of Adams Boulevard.

He found 9 feet of one-wheel skidmarks leading from the point of impact in a northerly direction and ending at one of the front wheel of the bus, the front end of the bus being a few feet north of the northerly line of the east-west crosswalk paralleling Adams Boulevard. He testified that he spoke to Maria, that her left foot was crushed and that she said "I looked at the light and it was green for me, and I thought it was all right, and I started crossing the street." He further stated that he talked to Cross, who told him the light changed to yellow as he was entering the intersection and that it changed to stop when he was half-way through the intersection, and that Cross had indicated a point in the street which he had measured off to be 23 feet south of the point of impact, as the place where Cross was when he saw that Maria was going to cross the street in a westerly direction.

There was also testimony by a retired police officer (Benton) from which an inference could be drawn that when the bus entered the intersection from the south, the traffic signal was red.

On direct examination Maria was asked what she did prior to the accident in the nature of activity that she was no longer able to do, and she answered, "I was working all the time during summers, and after school, every day . . . ." She testified further that she worked steadily full-time during vacations and part-time when she was in school from June of 1954 to the date of the accident when objection to such testimony was made on the basis that it was immaterial in that there was no request in the complaint for loss of wages. It was then stated that an amendment to conform to proof would be offered. Counsel approached the bench and argued the point (out of the hearing of the jury), after which it was ruled that the evidence would be allowed, and that the amendment to conform to proof would be allowed. No motion was made by the defendant for a postponement or continuance on the basis of surprise or hardship in meeting the new issue, and testimony was then adduced to the effect that Maria's average earnings for after school work and Saturday work were about $15 to $18 per week. Bills were introduced indicating medical, hospital and other related expenses were incurred in the total sum of $2,436.16.

A motion was made by the defendants outside of the presence and hearing of the jury for a directed verdict on the

basis that the facts inescapably showed contributory negligence. The motion was submitted without argument and denied. The jury returned a unanimous verdict for the plaintiff Maria E. Merey and assessed her damages in the sum of $18,500, and for the plaintiff Imre G. Merey and assessed his damages in the sum of $4,236.16.

Subsequently a motion was made by the defendants for judgment notwithstanding the verdict, and in the alternative for a new trial. The motion for judgment notwithstanding the verdict was denied. The motion for a new trial was taken under submission and later denied. This appeal has been taken from the verdict and the judgment.

On appeal, the following contentions are made:

(1) that plaintiff Maria E. Merey was negligent as a matter of law, and that negligence caused her injuries and barred recovery by her and her father;

(2) that prejudicial error occurred concerning admission of evidence, over objection, on earnings of the minor plaintiff, which error was compounded and cumulated with instructions dealing with the subject;

(3) that prejudicial error occurred in the giving of four jury instructions; and

(4) that prejudicial error occurred in the refusal to give an instruction.

Appellant relies heavily upon the testimony which was elicited from Maria on cross-examination to establish that she was guilty of contributory negligence as a matter of law. On direct examination, she was asked the specific question: "Did you see this bus before it struck you?", and answered "No, I did not." On cross-examination, she was asked, "Miss Merey, did you at any time see this bus before the accident?", and she answered, "I know I got off a bus and I crossed the street. But when the accident was, I did not hear or I did not see a bus." She was also asked if she recalled saying, as the police officer had testified she told him at the scene of the accident, "the light was green for you and you started to walk across the street, in the crosswalk, and did not see the bus and knew the light was green and you thought it was all right?", to which she answered "Yes."

The bus driver testified at the trial that the signal was green when he entered the intersection, however he also testified that it was green when he stopped at the bus stop. The police officer testified that at the scene of the accident he was told by the bus driver as follows: "He told me he started up

from a stop. The light was green. *As he was entering the intersection the light changed to yellow* and when he was halfway through the intersection the light changed to stop, 'and the girl started walking across the street without looking in my direction.' " (Emphasis added.)

Appellants have cited the case of *Lazzarotto* v. *Atchison, T. & S. F. Ry. Co.*, 157 Cal.App.2d 455 [321 P.2d 29], in which a substantial verdict was awarded to a motorist who drove into the side of a freight train. A motion for judgment notwithstanding the verdict and a motion for a new trial was granted, and the motorist appealed. Appellants assert that the cited case is decisive here. The appellate court carefully reviewed the particular factual situation involved, specifically mentioning that the motorist was thoroughly familiar with the location of the railroad tracks, that he had been without sleep for 20 hours, that he had been drinking beer and playing poker, that he applied his brakes about 250 feet from the railroad tracks, that he laid down skid marks for 108 feet, and that he struck the *seventeenth* or *eighteenth* car of a 38 freight car train. It was then stated (at p. 460), "There is little to be gained in a comparison of the reasonableness of the conduct of the parties in the case that is under review with the actions of the parties in a myriad of cases involving negligence, since there are in every case important facts peculiar to that case alone. We have merely to decide whether there was evidence that plaintiff Lazzarotto *took any precautions whatsoever* which would have been taken by one of ordinary prudence to save himself from injury. We have been *unable to discover that his conduct in any respect was that of a reasonably prudent person.*" (Emphasis added.)

In view of the conflicting testimony in the present case as set forth hereinabove, we think it was properly left to the jury to determine as a question of fact whether plaintiff was free from contributory negligence.

We have carefully reviewed the cases cited by appellants in support of their position. Several of the cases (namely, *Edgar* v. *Citraro*, 112 Cal.App. 163 [297 P. 645]; *Berlin* v. *Violett*, 129 Cal.App. 337 [18 P.2d 737], and *Flannery* v. *Koch*, 103 Cal.App.2d 55 [228 P.2d 580]) involve actions for damages resulting from personal injuries sustained by guest passengers in automobiles or for the wrongful death of such guest passengers. These cases will not be reviewed herein because the factual situations as well as the applicable standards of care

are very different from the instant case. In another case cited by the defendants, *Hall* v. *Osell*, 102 Cal.App.2d 849 [228 P.2d 293], the finding by the appellate court that the defendant bailor was negligent was predicated in large measure upon the nature of the obligation assumed by a bailor when specific instructions were given as to the use of bailed property. In this case there is no question of bailment.

The case of *Miller* v. *Schell*, 149 Cal.App.2d 346 [308 P.2d 445], also cited by defendants, involved an action for injuries sustained in an automatic push-button elevator. This case is cited by appellants as clearly stating "that a duty rests on a plaintiff to look where she is going, and to see that which is in plain sight, and *it is negligence as a matter of law not to so use her faculties.*" However, in a reading of the opinion, the following language appears (at p. 351) : "Under the circumstances whether plaintiff was negligent in not looking or if she looked but did not look carefully enough *was a question of fact to be determined by the jury.* The instruction charged the jury as a matter of law 'that it was negligence on her part not to use her faculties.' It gave the jury no opportunity to determine whether or not the plaintiff was justified in light of the evidence in looking in the manner in which she testifies she did or in not seeing the position of the bottom of the elevator with reference to the floor level." (Emphasis added.)

In another of the defendants' cited cases, *Huetter* v. *Andrews*, 91 Cal.App.2d 142 [204 P.2d 655], the court did hold that the operation of defendant's car with obvious disregard for ordinary care constituted negligence as a matter of law. In that case defendant was driving an automobile, and the court stressed that the operator of an automobile is bound to anticipate that he may meet persons or vehicles at any point in the street and that all drivers of vehicles on a public highway are required to keep a vigilant lookout ahead.

Appellants state in support of their position, "All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see that which may be readily seen, if the driver is looking, would constitute *negligence* as a matter of law (emphasis added)," citing *Holibaugh* v. *Ito*, 21 Cal.App.2d 480, 485 [69 P.2d 871], as authority therefor. From a reading of the case, we have noted that the court merely commented that such an instruction had met with the approval of the court, citing *Berlin* v. *Violett*,

*supra,* which latter case, as was indicated hereinabove, involved a suit filed by a guest passenger. In commenting on the instructions which were given in *Holibaugh* v. *Ito, supra,* the court stated (at p. 484), "the instruction did not charge the jury that for one to look and fail to see that which is in sight constitutes negligence as a matter of law but merely told the jury that it was as negligent *to fail to observe* that which could be plainly seen *as not to look at all.*" It should further be noted that in *Holibaugh* v. *Ito, supra,* both plaintiff and defendant were operating motor vehicles in an intersection, and the court pointed out that each was required to use exactly the same degree of care to avoid the accident.

It was appropriately stated in *Perry* v. *First Corporation,* 167 Cal.App.2d 359, at page 364 [334 P.2d 299]:

"The test to be applied in such a case as this we find well expressed in *Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826] . . . : '. . . contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citations.]' "

As heretofore indicated, we are of the opinion that the plaintiff was not guilty of contributory negligence as a matter of law in the present case.

Appellants' next contention is that prejudicial error occurred concerning admission of evidence, over objection, on the earnings of the minor plaintiff. When this testimony was presented, in order to prepare to meet it a continuance could have been requested, but no such request was made. (2 Witkin, California Procedure, pp. 1622, 1752.) The amendment of the pleadings which was allowed, did not change the cause of action, but merely stated facts to support an additional legal theory of recovery. Appellants assert that "The Pleadings were not amended to include loss of earnings." However, a document entitled "Supplemental to Complaint " was filed during the trial which does allege that "plaintiff has lost earnings and has not worked since the happening of the accident; that plaintiff is informed and believes and upon such information and belief alleges that she will continue

for a long time in the future to be unable to fully pursue her employment, all to her damage in the sum of $1,020.00 to date.''

■ Correct instructions were given by the court to the effect that the earnings of the unemancipated minor Maria belonged to her parents. Appellants contend, however, that the loss of earnings was an item of special damage to the father and should have been specially pleaded; that the pleading of general damages to the daughter was not an allegation of special damage to the father, and that the admission of evidence on loss of earnings without an allegation of special damages was prejudicially erroneous. In view of the instruction given with respect to the measure of parents' damage, we have concluded that the variance between the allegation of damage in the ''Supplemental to Complaint'' and the proof presented with respect to the issues of loss of earnings and loss of earning power, should not be deemed to be material (Code Civ. Proc., §§ 469, 470), under the circumstances of this case. No one was misled by the amendment, nor by the course of events which followed. The end result in all probability would have been the same whether the plaintiffs had set forth the matter of loss of wages in the original complaint, or as they did. There was no bad faith upon the part of the plaintiffs, and there was no miscarriage of justice.

Appellants next contend that it was error to instruct the jury with respect to the duty of a vehicle driver about to enter an intersection on a ''Go'' signal, contending there was no evidence that any cross-traffic on the prior Go signal had failed to clear; that it was error to instruct the jury with respect to dangers apparent to the driver of the bus because of violation by another of the cross-traffic signal, contending there was no evidence that any driver or pedestrian had entered or was about to enter the intersection against a Stop signal; and that it was error to instruct the jury as to justification, by reason of emergency, of signal violation, contending there was no evidence of any emergency causing a violation of traffic control lights.

■ Appellants further contend that it was error to instruct the jury as to the law pertaining to vehicular and pedestrian movement when the signal was red or ''stop''; and as to the presumption of negligence which may arise from a violation thereof, contending that such instructions, read together, misled the jury by suggesting that a signal violation

occurred and that such violation was negligence. There was evidence from which it might have been inferred that the bus driver did enter the intersection against the red light. A retired police officer, Hollis B. Benton, testified that he was approximately at 25th Street and South Broadway when the accident happened, that he was traveling in a southerly direction on South Broadway, and that the signal was green for him when he passed through the intersection of South Broadway and Adams Boulevard immediately after the accident. However, it should be noted that the instruction, given by the court, included the following statement: "In giving you this instruction, I do not mean to imply, nor to suggest that any party, involved in the accident in question, did enter the intersection that is under our consideration against a stop signal, or that any party made a negligent approach to the intersection. *Whether or not either of those things was done is a question of fact that you must decide.*" (Emphasis added.)

Appellants further contend that prejudicial error was committed by the refusal of the trial court to instruct the jury to the effect that Maria was negligent in failing to make reasonable observations to determine that it was reasonably safe to attempt the crossing before attempting to cross the street. We have heretofore determined that contributory negligence as a matter of law was not shown to exist in the instant case.

In the light of the testimony in this case, we have carefully reviewed the instructions which were given as a whole. We have read the entire record and have determined that no instruction or combination of instructions was prejudicial to the appellants, and further, that the case was fairly tried and that there was no prejudicial error.

The attempted appeal from the "verdict" is dismissed.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 15, 1959, and appellants' petition for a hearing by the Supreme Court was denied July 15, 1959.