[Civ. No. 63. Fifth Dist. Apr. 23, 1962.]

FRED GONG, Plaintiff and Appellant, v. FIREMEN'S IN-SURANCE COMPANY OF NEWARK, NEW JERSEY, Defendant and Respondent.

Hanna & Brophy, Burke & LaRue, Eugene A. Biglow, Donald R. Brophy and John C. Burke for Plaintiff and Appellant.

Augustus Castro for Defendant and Respondent.

BROWN, J.—This is an action to recover on a fire insurance policy. Plaintiff's notice of appeal is from a judgment entered on a defense verdict. His briefs present an appeal from the order denying his motion for new trial. Defendant tacitly agrees with this view by urging that the ruling on the motion for new trial was proper.

An order denying a motion for new trial is nonappealable

(Code Civ. Proc., § 963; *Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907]) and is reviewable only through an appeal from the judgment (*Hamasaki* v. *Flotho*, 39 Cal.2d 602, 608 [248 P.2d 910]). We interpret the briefs as relating to the appeal properly taken from the judgment.

At the time in issue plaintiff owned and operated a grocery store at Clovis, where he resided, and owned the Merced Bargain Center, a variety type store located at Merced, which was managed by one Louis Weiss. This litigation grew out of a fire occurring in the Merced store.

The facts, so far as relevant to this decision, may be summarized as follows:

On March 19, 1958, plaintiff, Weiss and one George Jaire commenced operation of the Merced store. On April 1, 1958, defendant issued to the three partners a standard form fire insurance contract with limits of $15,000 covering merchandise and $1,000 covering equipment. The value of the stock on hand on that date is unknown. On August 8, 1958, the partnership was dissolved and thereafter plaintiff owned the Merced store as sole proprietor. Weiss managed the store. Jaire surrendered his keys to Weiss. A new padlock was placed on the front door and two keys obtained. Weiss testified that both he and plaintiff had a set of keys. No one else had a key to the store. The book inventory then showed a total of $15,949. Shortly after the dissolution, plaintiff became the sole named insured and the names of Weiss and Jaire were deleted from the policy. On September 19, 1958, the policy limits were amended to cover $45,000 in merchandise. On Saturday, November 15, 1958, plaintiff and his four minor children left their home in Clovis and motored to San Francisco for the purpose of meeting plaintiff's estranged wife and bringing her back to Clovis with them. There is a conflict as to whether plaintiff also intended to attempt to borrow money on that trip. There is testimony that, while en route to San Francisco, plaintiff stopped at the Merced store and had a brief conversation with Weiss. They discussed plaintiff's domestic problems and the possibility of a new competitive store opening in Merced. There is conflicting evidence that they also discussed plaintiff's financial problems.

On Sunday, November 16, 1958, Weiss, his ex-wife and children were at the store. They left at either 9:30 or 10:30 o'clock p. m. At that time the doors were checked and found to be securely locked. The rear door was secured by a padlock on the inside and could not be opened from the outside.

In addition to the lock in the front door, a hasp and padlock had been added. Both were locked.

Plaintiff left San Francisco at either 9:30 or 10:30 o'clock p. m. with his wife and children, and drove to their home in Clovis. Both plaintiff and his wife testified that he drove through Merced without stopping, stopped at Madera for coffee, and arrived home at either 12:30 or 1:30 o'clock a. m. Monday, November 17th. There is no evidence that he went to the Merced store.

At about 11:20 o'clock p. m. on the 16th, fire broke out in the Merced store, burning and damaging some equipment and stock. At that time the book inventory of goods at cost was $25,049.86.

There was evidence that the investigation of the Merced Fire Department shows beyond a doubt that the fire was of incendiary origin and that it was set by a person, or persons, who entered with a key. The stock inventory showed that lighting fluid and cleaning solvents, both incendiary agents of the type shown by chemical analysis to have been involved in the fire were readily available. On the night of and shortly after the fire, Weiss told Deputy Fire Chief Crotti that $1,600 in cash was missing. There was some question as to where the money had been placed in the store. Shortly after Crotti telephoned the Police Department, Weiss said he thought the money was at his home and it was, in fact, found there.

Defendant's adjuster, Trost, instructed Weiss to keep the stock, damaged and undamaged, intact until a representative of Underwriters Salvage Company could inventory it. However, about December 7, 1958, Weiss, with the consent of plaintiff, removed stock having an alleged retail value of $7,672.18 to the Thrifty Green Store at Madera where it was commingled with Thrifty's regular stock before Mr. Stoffers, the representative, inventoried it. Mr. Stoffers was, however, given a copy of the inventory taken by Weiss and the manager of the Thrifty Green Store and checked it against items in Thrifty's stock. Trost also testified that Weiss refused to assist Stoffers in reconstructing the missing inventory on the basis that he did not want anything more to do with the fire and did not wish to incriminate himself. However, Martha Saenz, a stock clerk for the store, with the approval of Weiss, assisted Mr. Stoffers in attempting to reconstruct the missing inventory.

There was testimony that plaintiff's attorney requested

defendant to provide a form of proof of loss, and was instructed by defendant's employees and agents to draft such proof in accordance with the terms of the policy. This the attorney attempted to do by consulting with both plaintiff and plaintiff's accountant. From the former he received such figures as the plaintiff had. From the latter he received the books of record of the business. The attorney wrote each creditor, requesting an invoice in order to verify the accounts payable. On February 2, 1959, a proof of loss, executed by plaintiff under oath, was presented to defendant. On February 27, 1959, a supplemental proof of loss, also executed by plaintiff under oath, was presented. Defendant made no objection to either form or contents until the filing of its answer in this lawsuit.

In accordance with the terms of the policy, plaintiff, at the request of defendant, submitted to a question and answer form of statement, given under oath.

The evidence further showed that plaintiff was heavily in debt. No useful purpose would be served by itemizing his obligations, some of which had been incurred in 1954. Weiss testified that the Merced store was operating at a loss. However, there was no evidence that any of plaintiff's creditors were pressing him. Plaintiff admits that he was "overextended" but points out that, since he was not being pressed for payment and since he had substantial assets, he did not "need" this fire to assist him financially.

On June 11, 1959, plaintiff commenced this action to recover $23,662.56 on the policy. Defendant answered, denying the material allegations of the complaint and pleaded affirmative defenses which, so far as are relevant here, charged that plaintiff entered into a conspiracy with Weiss to cause stock and equipment covered by the policy to be burned and to falsely swear to the amount of said stock, its value, and lack of knowledge of the origin of the fire. At trial, plaintiff proved a loss of $19,424 and the complaint was, with permission of the court, amended to conform to proof. There was a defense verdict. Plaintiff's motion for a new trial was denied. Plaintiff appeals from the judgment entered on the verdict.

As grounds for reversal, plaintiff assigns as prejudicial error the giving of instructions and the refusal to give instructions.

■ The most serious assignment of error is that the court committed prejudicial error in refusing to give plaintiff's proffered instruction based on subdivision 1, section 1963, of

the Code of Civil Procedure, that "There is a presumption 'that a person is innocent of crime or wrong.'"

For plaintiff's position to be sustained, three things must concur: (1) he must have entered upon trial clothed with the presumption; (2) the presumption must not be deemed to have disappeared from the case prior to the charge to the jury; and (3) rejection of the requested instruction must have resulted in prejudice to plaintiff's rights.

 It has long been settled in California that the presumption of innocence obtains in civil cases where the commission of a crime becomes a collateral issue (Code Civ. Proc., § 1963, subd. 1; *Estate of Nelson*, 191 Cal. 280, 284 [216 P. 368]; *Cooper* v. *Spring Valley Water Co.*, 16 Cal.App. 17, 23 [116 P. 298]; *Wilkinson* v. *Standard Acc. Ins. Co.*, 180 Cal. 252, 256 [180 P. 607]) and that it is one of the strongest disputable presumptions known to the law (*Drown* v. *New Amsterdam Casualty Co.*, 175 Cal. 21, 23 [165 P. 5]; *Estate of Brady*, 177 Cal. 537, 540 [171 P. 303]; *Hunter* v. *Hunter*, 111 Cal. 261, 267 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411], 18 Cal.Jur.2d, Evidence, § 78, p. 505). In the present case, the affirmative defenses charged the plaintiff with criminal acts, and the plaintiff entered upon the trial clothed with the presumption of innocence. That presumption is evidence in favor of plaintiff and may outweigh positive evidence adduced against it (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 549 [299 P. 529]; *Savarese* v. *State Farm etc. Ins. Co.*, 150 Cal.App.2d 518 [310 P.2d 142]).

Our next task is to determine whether the presumption was dispelled. The case of *Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1 [210 P. 269], laid down the test for determining when a disputable presumption vanishes from the case. At page 9, the court stated the true rule to be—

". . . a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case."

The heart of that rule has been approved and applied in a long line of cases decided since *Mar Shee*. (*Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432]; *Westberg* v. *Willde*, 14 Cal.2d 360, 365 [94 P.2d 590]; *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77

P.2d 1059]; *Mundy* v. *Marshall*, 8 Cal.2d 294, 296 [65 P.2d 65]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 555 [299 P. 529]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 38 [297 P. 884]; *Aguilera* v. *Atchison T. & S. F. Ry. Co.*, 188 Cal.App.2d 274, 278 [10 Cal.Rptr. 367]; *Powley* v. *Appleby*, 155 Cal. App.2d 727, 733 [318 P.2d 712]; *Merey* v. *Los Angeles Transit Lines*, 170 Cal.App.2d 457, 465 [339 P.2d 211]; *Shirk* v. *Southern Pac. Co.*, 103 Cal.App.2d 97, 100 [229 P.2d 100]; *Steward* v. *Paige*, 90 Cal.App.2d 820, 825 [203 P.2d 858]; *Levin* v. *Brown*, 81 Cal.App.2d 913, 917 [185 P.2d 329].)

While the record in the present case discloses the usual type of inconsistencies in details characteristic of testimony given at trial relating to transactions long past, it is barren of "uncontradicted testimony" falling from the lips of plaintiff and his witnesses sufficient to dispel the presumption. Indubitably the evidence disclosed the fire originated in arson, the arsonist entered with a key, and only Weiss and plaintiff possessed keys. From this point forward there is a fork in the path of testimony. All other evidence is in sharp conflict and is as consistent with innocence on the part of plaintiff as it is with guilt. That he was in debt and needed money may indicate motive; that his creditors were not pressing him and he possessed assets of considerable value, may indicate no motive. That the proof of loss overvalued the actual loss may indicate false swearing with intent to defraud; the testimony of his attorney and his accountant as to their good faith efforts to prepare a proper proof may indicate fraud lacking. Weiss may, or may not, have attempted to personally gain by diverting a portion of the stock and the $1,600 cash, but no evidence links plaintiff to those acts, and the conduct of Weiss in this respect may not be ascribed to plaintiff, without connecting testimony. There is direct evidence that plaintiff was driving through Merced at about the time the fire may have been set but no evidence that he was at the Merced store. He testified that he did not make a stop in Merced.

In short, inferences may be drawn establishing either guilt or innocence, and had the instruction here discussed been given, we would be bound to uphold the judgment, and leave the preponderance where the jury placed it. But the plaintiff is entitled to have the presumption weighed by the jury. Viewing the evidence in the light most favorable to plaintiff, as we must when considering the propriety of the trial judge's refusal to give an instruction, timely requested by him

(*Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614 [255 P.2d 785]; *Mau* v. *Hollywood Commercial Buildings, Inc.*, 194 Cal.App.2d 459 [15 Cal.Rptr. 181]), we are compelled to the belief that, in view of the circumstantial character of evidence of conspiracy and false swearing, the trial court erred in refusing the instruction.

Defendant has referred us to the cases of *Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210 [331 P.2d 617]; *Stout* v. *Southern Pac. R.R. Co.*, 127 Cal.App.2d 491 [274 P.2d 194]; *Tice* v. *Kaiser Co.*, 102 Cal.App.2d 44 [226 P.2d 624]; *Bradford* v. *Sargent*, 135 Cal.App. 324 [27 P.2d 93]; *Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1 [210 P. 269]; *Gigliotti* v. *Nunes*, 45 Cal.2d 85 [286 P.2d 809].

*Laird*, *Stout* and *Tice* were personal injury or wrongful death actions based on a theory of negligence. The presumption of due care was held to be dispelled and hence inapplicable because of evidence of negligence produced by the party seeking to invoke the presumption. In *Bradford*, plaintiff sought to bring the owner of a vehicle, who had expressly forbidden its use to the negligent driver, within the purview of the permissive use statute, by invocation of the presumption that the law had been obeyed. The presumption was held to be inapplicable since the statute imposing owner liability expressly requires ''permission,'' and the evidence clearly showed the car was being driven contrary to express orders. In *Gigliotti*, judgment on a defense verdict in a personal injury action was reversed for failure to give a due care presumption instruction. The court pointed out, as have we here, conflicts in the evidence and stated that, aided by a consideration of the presumption, the jury could well have reached a different verdict. The *Mar Shee* case is readily distinguishable on its facts. These cases are peripheral to the problem before us, but none is determinative.

The next question to be determined is whether failure to give the instruction prejudiced plaintiff within the meaning of article VI, section 4½ of the Constitution of this state. Defendant contends that, even though the instruction may have been improperly refused, such refusal was not prejudicial error. In support of its position defendant argues that (1) in civil cases, a preponderance of the evidence will overcome the presumption and the evidence of guilt was ''overwhelming''; and (2) the jurors were well aware of the presumption since it was mentioned by both counsel in argument.

We agree that evidence sustaining a conclusion that the fire was set by one who did not force an entry but used a key is overwhelming, but, as we have shown, evidence connecting plaintiff with the act of arson, or conspiracy in that respect, or false swearing, or submitting a fraudulent proof of loss is sharply conflicting. ■ Concededly, one asserting conspiracy or fraud may prove his theory by circumstantial evidence preponderating in his favor. Indeed, a confession absent, direct evidence of a conspiracy is seldom available (*Johnstone* v. *Morris,* 210 Cal. 580 [292 P. 970]). ■ But we cannot agree that here evidence of guilt is overwhelming. Nor can we believe that the jurors found it so, since their deliberations consumed 6 hours and 32 minutes.

■ Defendant's second argument is totally devoid of merit. Manifestly, mention by counsel of the presumption of innocence during argument does not have the force and effect of an instruction on a principle of law given under the full authority of the trial court; and cannot, therefore, be deemed an adequate method of submitting the presumption to the jury. Because of the multifingered nature of the defenses here raised, the charge as a whole, while essentially correct, weighed heavily against plaintiff. Under such circumstances the innocence presumption instruction would have aided in presenting a full, fair and well-balanced charge. ■ Apparently the jury placed great reliance upon, and in reaching its verdict was guided by, the trial court's charge, since during deliberation the jury requested a rereading of the instructions, which request was complied with. This lends support to the probability that a different verdict might have been reached had the instruction been given.

The trial court's rejection of the instruction cannot be deemed to have been nonprejudicial, and therefore constitutes grounds for reversal.

Plaintiff's other assignments of error in instructing the jury have been carefully considered and we have found no prejudicial error. While there is some repetitious language in the instructions on the law governing conspiracy, it falls far short of the repetition condemned in *Taha* v. *Finegold,* 81 Cal.App.2d 536 [184 P.2d 533], and does not result in reversible error. Plaintiff is apparently offended because the trial court failed to give an instruction based on the case of *Miller* v. *Fireman's Fund Ins. Co.,* 6 Cal.App. 395 [92 P. 332]. Had he desired such instruction, he was under a duty to request it (*State Rubbish Collectors Assn.* v. *Siliznoff,* 38

Cal.2d 330 [240 P.2d 282]; *Colgrove* v. *Lompoc etc. Club,* 51 Cal.App.2d 18 [124 P.2d 128]). Defendant's instruction that "A concealment of fact, whether intentional or unintentional, which is material to the risk voids the policy," finds little support in the evidence but, as defendant points out, it is difficult to find wherein it misled the jury to the prejudice of plaintiff.

Moreover, since the record does not disclose the identity of the litigant offering the instructions given, including those of which complaint is now made, we are bound by the rule that all instructions must be presumed to have been requested by appellant, and may not be challenged by him. (*Connor* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 746 [232 P.2d 500].)

Since we have concluded that the refusal of the trial court to instruct the jury on the presumption of innocence prejudiced plaintiff's rights, the judgment is reversed.

Conley, P. J., and Stone, J., concurred.