Velma L. HEYWARD, Appellant,

v.

REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellee.

No. 15442.

Court of Civil Appeals of Texas, San Antonio.

Sept. 10, 1975.

Rehearing Denied Oct. 1, 1975.

Oliver S. Heard, Jr., San Antonio, Thomas S. Goggan, III, Austin, for appellant.

Earle Cobb, Jr., Cobb, Thurmond & Bain, Inc., San Antonio, for appellee.

KLINGEMAN, Justice.

This is a suit for accidental death benefits under a group life insurance policy. Trial was to a jury. Plaintiff, Velma L. Heyward, appeals from an instructed verdict that she take nothing against defendant, Republic National Life Insurance Company, entered by the trial court at the conclusion of plaintiff's evidence. Plaintiff is the beneficiary under such policy which covered her husband, Bennie T. Heyward, who was an employee of the City of San Antonio at and before his death. Bennie T. Heyward was shot to death September 23, 1973.

The policy here involved provided life insurance coverage based upon the annual salary of the employee and also accidental death insurance in the amount of $12,000 under an accidental death rider. It is undisputed that the life insurance benefits were paid to plaintiff by defendant, and that defendant had refused to pay the accidental death benefits.

The pertinent portions of the policy here involved are summarized as follows:

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

"If a Person, while insured under this Section of the Group Policy sustains an injury effected solely through external, violent and accidental means and as a result thereof, directly and independently of all other causes, suffers a loss specified

below within ninety days following the date of the injury, the Company, subject to all provisions of the Group Policy, will pay (a) the Principal Sum for a loss of life; . . .

## LIMITATIONS APPLICABLE TO ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE.

Benefits shall not be payable for any loss to which a contributing cause is

(a) self-inflicted injury or self-destruction while sane or insane; or . . .

(e) participation in or as the result of the commission of a felonious act."

By one point of error, plaintiff complains that the trial court erred in granting defendant's motion for instructed verdict at the conclusion of plaintiff's evidence, and in entering a judgment that plaintiff take nothing because plaintiff's evidence was sufficient to establish a *prima facie* case for recovery under the policy.

By counterpoints defendant asserts that the trial court correctly granted defendant's motion for instructed verdict at the conclusion of plaintiff's evidence because: (a) there was no evidence proving that death was effected solely through accidental means; (b) the evidence was undisputed that a contributing cause of death was the result of the commission of a felonious act; (c) the plaintiff failed to show by competent evidence Bennie Heyward sustained an injury " 'effected solely through external, violent and accidental means and as a result thereof, directly and independently of all other causes,' Heyward died."

An examination of the entire record reveals the following evidence: (a) the insurance policy, the pertinent portions of which have been heretofore summarized; (b) a certificate of death of Heyward stating that he died on September 23, 1973, and that the immediate cause of his death was a gunshot wound to the heart; (c) a medical examiner's report made by Dr. James I. Duff, pathologist, who performed the autopsy, stating: (1) the cause and means of Heyward's death was "multiple gunshot wounds of the chest and back with wounds of the heart, liver, right kidney, and right adrenal; . . . The manner is homicide." (2) that Heyward was reportedly shot at his home address at 311 Vine Street at approximately 1:00 a. m. on September 23, 1973; (3) the autopsy report describes in some detail an external and internal examination, describing five bullet wounds and their locations; that there were also numerous lacerations made by a sharp object over the forehead, left face, ear and right eye; that the lacerations have sharp edges and suggest entry by knife; that there were also two deep 12 inch lacerations in the back; (4) the report concludes that Bennie Heyward died of gunshot wounds to the chest and back with wounds to the heart, liver, right kidney and right adrenal and that the manner is homicide; (d) Dr. James I. Duff, a pathologist, testified that he performed an autopsy on Heyward on September 23, 1973, and that he prepared the report above summarized; that he found five gunshot wounds in the body; and that Heyward actually died from loss of blood. He further testified that in his examination he recovered a single 357 Magnum bullet. He also testified that in addition to the gunshot wounds he found some lacerations that could have been caused by a knife. He testified that the manner of death was homicide and that Heyward was shot by another person. He excluded the possibility that Heyward shot himself, and he ruled out suicide. (e) John R. Kaznowski testified that he is administrative assistant to the personnel director of the City of San Antonio and that on September 23, 1973, Bennie Heyward was covered by a policy of insurance by Group Policy No. 12212 and Certificate No. 3363. (f) Portions of depositions of James Edda Anderson and Oscar M. Anderson were introduced into evidence. They both testified that they lived at 311 Vine Street, but they both refused to answer any other questions on the grounds that any answer that they might give

might tend to incriminate them. (g) Velma L. Heyward testified that she was the plaintiff in the case and that she was married to Bennie Heyward; that at the time of the death of Bennie Heyward she made a claim for insurance benefits; that she received the $3,000 basic life insurance benefits but that she did not ever receive any payments under the accidental death provision. (h) Rev. Antone Dykes testified that he was an ordained minister, and that he was acquainted with Bennie Heyward during his life-time and that his reputation for being a law-abiding citizen and a peaceful person was good.

This is an appeal from an instructed verdict. The courts of this state have repeatedly held that it is error to instruct a verdict where the evidence raises any material issue. In passing upon the question of authority of the trial court to instruct a verdict, the evidence must be considered most favorably in behalf of the party against whom the verdict is instructed. A pre-emptory instruction is warranted only where the evidence is such that no other verdict should be rendered. If there is any conflicting evidence in the record of probative nature, a determination of the issue is for the jury. *Air Conditioning v. Harrison-Wilson-Pearson,* 151 Tex. 635, 253 S.W.2d 422 (1952); *White v. White,* 141 Tex. 328, 172 S.W.2d 295 (1943); 3 McDonald, Texas Civil Practice, Section 11.28.2 (1970). If such evidence is of sufficient force that reasonable minds might differ as to the ultimate conclusion to be reached, the case should be submitted to the jury. *Reed v. Hester,* 44 S.W.2d 1107 (Tex. Comm'n App. 1932, holding approved); *Culkin v. Nieman-Marcus Company,* 354 S.W.2d 397 (Tex.Civ.App.—Fort Worth 1962, writ ref'd); *Devereaux v. Smith,* 213 S.W.2d 170 (Tex.Civ.App.—Waco 1948, writ ref'd n. r. e.).

Under the pleadings and the applicable authorities, the burden of proof was on plaintiff to prove that the insured's death resulted solely by accidental means; that it did not result from self-inflicted injury or self-destruction, and did not result from Heyward's participation in or as a result of the commission of a felonious act. Plaintiff asserts that she met such burden and that when she rested her case, she had introduced sufficient evidence, coupled with such presumptions as are recognized by law to support her claim. Defendant argues that there is no way five gunshot wounds from a revolver and numerous cuts with a knife could constitute a death effected solely by "accidental means"; that under the evidence the death was either suicide, murder or justifiable homicide, and that Heyward was probably participating in a felonious act; that if an insured is intentionally killed, it cannot be an accident. We disagree.

The test of whether death is accidental is to be determined from the viewpoint of the insured and not from the viewpoint of the one who did the killing. *Releford v. Reserve Life Insurance Company,* 154 Tex. 228, 276 S.W.2d 517 (1955); *Great American Insurance Company v. Sumner,* 464 S.W.2d 212 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.). Ordinarily a death from an unprovoked homicide is a death resulting from accidental means within the terms of a life insurance policy. *American National Insurance Company v. Garrison,* 97 S.W.2d 534 (Tex.Civ.App.—Eastland 1936, writ dism'd); *National Life and Accident Insurance Company v. Hodge,* 244 S.W. 863 (Tex. Civ.App.—Texarkana 1922, writ dism'd).

The rule seems to be settled that although an insured is intentionally killed or injured by another person, the death or injury is deemed to have been caused by an accident or through accidental means, where it was neither foreseen, expected nor anticipated by the insured. Anno: 49 A.L. R.3d 676, Section 3, Accident Insurance-Intentional Injury (citing numerous cases, including a great many Texas cases); *Hanna v. Rio Grande National Life Insurance Company,* 181 S.W.2d 908 (Tex.Civ.App.—Dallas 1944, writ ref'd).

An important query before us is how much evidence is required before the ques-

tion of accidental death, and negation of the commission of a felonious act, must go to the jury. In the case before us, Heyward, the insured, was killed and his lips are sealed. The only purported eyewitnesses to the killing both refused to testify on the grounds of possible self-incrimination. The testimony establishes, and defendant does not dispute, that Heyward's death did not result from a self-inflicted injury or self-destruction. Defendant also concedes, and the evidence establishes, that the death resulted from shooting by another and that such death was from external and violent means. There is testimony that Heyward was a peaceful, law-abiding man. There is no evidence whatsoever that Heyward was the aggressor in the incident in which he was killed, or that he provoked the difficulty.

In cases such as these, there are certain well-recognized presumptions. There is a presumption against suicide or self-destruction; there is also a presumption that the decedent was not engaged in the commission of a crime at the time of his death. The rule is set forth in *Mutual Life Insurance Company v. Sargent,* 51 F.2d 4 (5th Cir.) 1931, as follows: "Upon the matter of proof it is the law, though there are one or two authorities contra, . . . that while the burden is upon plaintiff in cases of this kind to prove death resulting from external, violent and accidental means, proof without more that insured was killed by another raises the presumption that death was accidental, and makes a prima facie case in the absence of evidence to the contrary." See Anno: 12 A.L.R.2d 1264, Proof of death or injury from external and violent means as supporting presumption or inference of death by accidental means within policy of insurance; *Great Southern Life Insurance Company v. Watson,* 343 S.W.2d 921 (Tex.Civ.App.—Amarillo 1961, writ ref'd n. r. e.); 1 C.J. 495; *Fort Worth Mut. Benev. Ass'n v. Jennings,* 283 S.W. 910 (Tex.Civ.App.—Eastland 1926, no writ); *Massachusetts Bonding and Insurance Company v. Santee,* 62 F.2d 724 (9th Cir.) 1933; *Mutual Life Insurance Company v. Sargent, supra; Aetna Life Insurance Company v. Hagemyer,* 53 F.2d 636 (5th Cir.) 1931, *cert. denied,* 285 U.S. 542, 52 S.Ct. 314, 76 L.Ed. 934, 1932; *Smith v. Mutual Life Insurance Company of New York,* 31 F.2d 280, *cert. denied,* 279 U.S. 868, 49 S.Ct. 482, 73 L.Ed. 1005, 1929; *Gong v. Firemens Insurance Company,* 202 Cal. App.2d 686, 21 Cal.Rptr. 110 (1962); *Preferred Accident Insurance Company v. Fielding,* 35 Colo. 19, 83 P. 1013 (1905); 12 A.L.R.2d 1264; 5 A.L.R.3d 10 at 76.

A case directly in point and involving similar facts and circumstances is *Massachusetts Bonding and Insurance Company v. Santee, supra.* This was a suit to recover the proceeds of a $7,500 accident insurance policy issued by appellant to Santee. The policy insured " 'against bodily injury sustained during the life of this policy directly and independently of all other causes through accidental means.' " The death of the insured was caused by gunshot wounds inflicted about an hour previous to his death by a revolver fired by W. B. Mahan. Mahan and his wife were the only witnesses to the killing and both refused to testify in regard to the shooting on the ground that their testimony might tend to incriminate them. There was no evidence, therefore, regarding the circumstances of the killing. It was conceded that the injuries which caused the death were external and violent and the issue was whether death occurred "through accidental means." The court, in upholding a directed verdict for Santee, held that while the burden is upon plaintiff in cases of this kind to prove death resulted from external, violent and accidental means, that proof, without more that insured was killed by another person raises the presumption that the death was accidental and makes out a prima facie case under the accident policy.

A Texas case in point is *Aetna Life Insurance Company v. Hagemyer, supra.* This was a suit upon the double indemnity provision in a life insurance policy in which the insured's death was at the hands of another.

The beneficiary contended and the insurer denied that the death of the insured " 'resulted directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means.' " The only eyewitness to the killing was the slayer, Wiley Page, a nephew of the insured, who testified that he shot in self-defense and to repel his uncle's deadly assault upon him. The insurance company requested a directed verdict which was denied by the trial court. The jury found the death to be accidental. On appeal, the insurance company contended that the trial court erred in refusing to grant an instructed verdict because:- (1) the testimony of Wiley Page standing uncontested by the testimony of any other witness must, as a matter of law, be accepted as true, and (2) if this is not so, and the self-exculpatory testimony of Page be rejected, the insurer was still entitled to its instructed verdict, because, without Page's testimony, there was no sufficient explanation of the circumstances of the death to bring the killing within the terms of the policy. The appellate court, in rejecting such contention, said:

> "Appellant cannot stand on either of these contentions. Appellees' evidence, standing alone, made a prima facie case of accidental killing. (citations omitted) This prima facie case the·appellant did indeed rebut by the testimony of Wiley Page that he killed in self-defense, if this testimony had been accepted as true. The jury had a right, however, to examine that testimony in the light both of

Page's interest in exculpating himself from blame, and of the discrediting and contradictory circumstances which the evidence afforded, and to accept or reject it in whole or in part as it in whole or in part commended itself to them as true." (citations omitted) [1]

Appellee also argues that if a person is intentionally killed by another, he died while participating in or as the result of the commission of a felonious act, and any recovery under the policy is barred by the exclusion in the policy. We do not agree. That the slayer is participating in or committing a felonious act is not enough; in order for such exclusion to be applicable, the insured must be participating in or committing a felonious act. The fact that the insured is murdered by another does not bar a recovery under the policy exclusion.

Under the evidence in the record, aided by the presumptions which the law avails to deceased, a jury could have reasonably concluded that the death was accidental within the terms and provisions of the policy. Reasonable minds could have differed as to whether or not Heyward's death occurred as the result of participation in or the commission of a felonious act. The trial court erred in granting an instructed verdict. The judgment is reversed and remanded to the trial court for a new trial.

1. A recent Texas case, *Great American Reserve Insurance Company v. Sumner, supra,* involved a suit for recovery of the proceeds of an insurance policy insuring against accidental death. The insured was killed while allegedly engaged in an act of sexual intercourse with the assailant's wife. The basic question was whether or not the insured died as the result of an accident. The trial court entered judgment for the beneficiary, which was affirmed by the appellate court, stating:

> "Thus when the evidence is viewed in a light most favorable to the finding, the killing of deceased cannot be said to be

the natural and probable consequence of the means which produced it. There is nothing in the crime of adultery, although a violation of the law of the land and a great moral wrong, which in its essence is calculated to produce the death of the adulterer. Under some circumstances it may be the occasion of the death of the adulterer, but his death is not the natural and legitimate consequence of the adultery itself . . . we do not believe it can be said that the deceased should have reasonably anticipated such violent consequence by reason of his conduct."